Argued and submitted June 27, reversed and remanded with instructions
December 31, 1986, respondent United States National Bank's motion for
reconsideration allowed by opinion April 8, 1987
See 84 Or App 580 (1987)

WINDISHAR,
*Appellant,*

*v.*

WINDISHAR,
*Respondent.*

WINDISHAR,
*Appellant,*

*v.*

UNITED STATES NATIONAL BANK OF OREGON,
*Respondent.*

(A5197 & A6027; CA A37069 & A37070)
(Cases consolidated)

731 P2d 445

Timothy B. O'Neill, Salem, argued the cause and filed the brief for appellant.

Howard H. Campbell, Portland, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Richardson and Warren,* Judges.

RICHARDSON, J.

* Warren, J., *vice* Rossman, J.

164

## RICHARDSON, J.

Petitioner in these consolidated actions is a protected person whose guardian is her adoptive brother, respondent Frank Windishar. She is also the life beneficiary of an *inter vivos* trust established by her late father and of a testamentary trust under her late mother's will. Respondent United States National Bank is the trustee of both trusts. Petitioner sought to have the guardian removed and replaced by Sister Mary Louise Olberding, who had exercised much of the responsibility for petitioner's immediate needs until the guardian essentially terminated her authority to do so and transferred that responsibility to a "care organization." In the trust proceeding, petitioner sought (1) removal of the trustee, (2) an order requiring the trustee to provide her with and obtain her approval of accountings for the trusts, (3) instructions to the trustee concerning the administration of and distributions from the trusts and (4) attorney fees. *See* ORS 128.115 to 128.175. The trial court denied all of the relief petitioner sought in both proceedings. We review *de novo* and reverse.[1]

■ Petitioner is an Oregon resident. The guardian lives in Spokane, Washington. The principal bases which petitioner asserts for the guardian's removal are that he is geographically and emotionally remote, that he is uninformed about and insensitive to petitioner's needs and that he and the persons he has engaged to attend petitioner do not provide her with either the services and activities or the financial support for them that petitioner requires. We agree with all of those assertions. The guardian's attitude toward petitioner ranges from begrudging supportiveness to exasperated hostility. His main motive for having assumed the guardian role and for desiring to continue in it is a sense of duty to his and petitioner's late parents. Although that motive has its admirable aspects, it contributes to the insufficiency of his concern for petitioner herself. The family is a devout one, and the guardian perceives petitioner's financial needs to be subordinate to the interests of the Roman Catholic charities which are the principal remaindermen of the two trusts. As we will discuss below, that perception, as well as being contrary to his

---

[1] We have considered and reject without discussion respondents' arguments pertaining to jurisdiction, venue and petitioner's capacity to hire an attorney or bring the proceedings.

sister's well-being, is at odds with his parents' clearly expressed intent.

There are no "bad" parties in this case. The guardian has served in that role without gain and out of a sense of duty. However, the consequences of his outlook on matters and the resulting way in which he has controlled petitioner's affairs are detrimental to her. The guardian is not suitable, *see* ORS 126.035; ORS 126.123, and we order that he be removed and that Sister Mary Louise Olberding be appointed as petitioner's guardian.

■ The problems between petitioner and the trustee may be a byproduct of the inadequacy of the present guardianship arrangement: the trustee's illiberality in disbursing funds to petitioner may have resulted in part from the guardian's priorities, and her discontent with the trustee may reflect or have been exacerbated by her dissatisfaction with the guardian and his decisions. If so, Olberding's appointment may go far toward remedying the problems. Be that as it may, the record provides no basis for the drastic remedy of removing the trustee or, as petitioner asks in the alternative, of *judicially requiring* the trustee to assign a different officer to administer the trusts. The trusts and petitioner herself would be disserved by the disruption in trust administration that could result from the trustee's removal.

■■ The other relief petitioner seeks against the trustee finds more support in the record. Petitioner requested that the trustee provide her with statements concerning the trust pursuant to ORS 128.125(2).² The trustee refused, without persuasive justification. Petitioner's mental disability is not so great that the trustee may rely on it to avoid the mandatory statutory duty of providing statements to a beneficiary upon request. The fact of the guardianship also does not excuse the trustee from complying with ORS 128.125. Subsection (1) of that statute provides:

"As used in this section, 'beneficiary' means any vested income or remainder beneficiary of a trust, determined as of

---

² Although petitioner's point is not wholly clear, we understand her references to "accountings" to mean the statements contemplated by ORS 128.125, and we understand the remedy she seeks to be an order that the trustee submit those statements to her rather than that the court itself conduct a trust accounting proceeding.

the date the request described in this section is received by the trustee, or the guardian or conservator of such beneficiary or the personal representative of a deceased beneficiary."

We agree with petitioner that the fact that a guardian may request statements from the trustee does not invariably mean that a beneficiary under the guardian's protection may not. The ability to manage one's own affairs and the right to be apprised about them are different matters. Moreover, in this case, the trustee's statements could have provided petitioner with relevant information about the constraints that the guardian placed on her because of his financial concerns, and the trustee was aware *at least* by the time of trial that petitioner's interests and the guardian's were adverse. We direct the trustee to provide petitioner with the statements she has requested and to comply with ORS 128.125 in the future.[3]

■  Petitioner's request for judicial instructions to the trustee pursuant to ORS 128.135(2)(c) presents more amorphous and difficult questions. Her arguments focus in the main on the trustee's investment practices. She contends that its conservative low-yield investments unduly limit the amounts that are available for expenditure on her behalf and are aimed at benefiting the remaindermen at her expense. Both the trust agreement executed by petitioner's father and the will of petitioner's mother give the trustee great discretion over the financial management of the trusts, and we are unable to say that the investment decisions violate either the terms of the governing instruments or any standards of prudent trust management. We nevertheless note that the trustee's investment policies may have to be adjusted to accommodate the concern, to which we now turn, that we have with the trustee's approach in distributing funds to petitioner.

We find that, like the guardian, the trustee has been extremely conservative in its understanding of petitioner's needs and legitimate expenses. Axiomatically, the trustee owes a duty to the remaindermen as well as petitioner. However, both trust instruments express a clear preference

---

[3] However, the statements are not subject to petitioner's "approval." Any difficulties she or Olberding may have with them must be resolved through direct communication with the trustee or through further judicial proceedings. *See* note 4, *infra.*

that the trust funds be used principally for petitioner's benefit. The trust agreement between her father and the trustee requires the latter

> "to pay or apply the income thereof available for distribution to or for the benefit of the daughter for the duration of her life, and UPON FURTHER TRUST, to pay or apply any part or parts of the capital thereof to or for the benefit of said daughter at such time or times and in such manner and all respects as the trustee, having due regard to her health, station in life and income from other sources, may think fit and most conducive to her welfare, for the duration of her life."

Petitioner's mother's will states:

> "I direct that my Trustee, upon receipt of the trust property, shall apply so much of the income and corpus thereof as may be necessary for the care, support and maintenance of my daughter, JO ANN WINDISHAR, realizing that it is difficult to ascertain the amount of money which would be necessary to provide my said daughter with livelihood in accordance to what she is accustomed to and I authorize my Trustee, in its sole discretion, to apply the trust funds, principal and interest, toward such care, support, and maintenance as it may see fit. I recommend, however, that the welfare of my daughter shall be the chief concern with reference to the application of the said trust fund."

Petitioner does not ask that the trustee be instructed to pay for specific expenses or to make specific periodic allotments to her, although she does give examples of the trustee's refusals to cover expenses, prospectively and retrospectively, and of the less than generous allowances which it has provided her. Consequently, the only instructions we *can* give are very general in nature. Both trustors stated that petitioner's needs and welfare were their preeminent concern, but they also gave the trustee discretion over distributions to her and payments on her behalf. In our view, the discretion has been exercised less liberally than the trustors intended. We instruct the trustee accordingly. If more specific instructions become necessary in the future, *see* note 4, *infra,* it may also become necessary to give further consideration to the remedies which petitioner has sought but which we have concluded are inappropriate at this time.

Petitioner is entitled to attorney fees, from the

trustee rather than the trust, under ORS 128.155. The trial court shall make a reasonable award of attorney fees on remand. In all other respects, our opinion requires no further proceedings in the trial court other than the entry of consistent judgments.[4]

Both judgments are reversed and remanded with instructions to enter judgments consistent with this opinion and, in trial court case number A-6027, to award attorney fees to petitioner from United States National Bank of Oregon as trustee.

---

[4] We note, however, that the trial court retains continuing jurisdiction.