Argued and submitted January 7, reversed and remanded with instructions in part; vacated and remanded in part; otherwise affirmed March 13, petition for review denied May 28, 2003 (335 Or 443)

## Paula SAMUEL,
### *Appellant,*

*v.*

## Pamela V. KING,
### individually,
### and Pamela V. King,
### as Personal Representative of
### the Estate of Jack Boyd Peterson,
### Deceased,
### *Respondent.*

## 00-CV-0581-MA; A117464

64 P3d 1206

Lawrence W. Erwin argued the cause and filed the briefs for appellant.

Charles N. Fadeley argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff appeals from a declaratory judgment concerning the existence of, and assets subject to, a trust created by her father, Jack Peterson, for the benefit of himself and his daughters—plaintiff and her sister, who is defendant in this action. Plaintiff argues that the trial court erred in relying on extrinsic evidence to conclude that certain titled assets were never a part of the trust, and also in awarding defendant prevailing party fees and costs. As explained below, we agree with plaintiff and, consequently, reverse and remand.

On May 16, 1998, Peterson executed an instrument titled "Revocable One-Party Living Trust Known as Pamela King and Paula Samuel Trust." Peterson, as grantor, declared his intent

"to create a revocable trust of the property described in Schedule A hereto annexed, together with such monies, and other assets as the Trustee may hereafter at any time hold or acquire hereunder (hereinafter referred to collectively as the 'Trust Estate'), for the purposes hereinafter set forth."

The trust instrument further provided that "the Grantor agrees to execute such further instruments as shall be necessary to vest the Trustee with full title to the property, and the Trustee agrees to hold the Trust Estate, IN TRUST, NEVERTHELESS," for designated purposes. The details concerning the purposes of the trust are, for the most part, not relevant to the legal issue presented, but it provided in pertinent part that the trust would be used during the lifetime of the grantor for the grantor's benefit, and, upon the death of the grantor, the trust assets would be distributed equally to plaintiff and defendant. The trust also provided that the grantor could, at any time during his lifetime, withdraw assets from the trust or annul the trust entirely, if he did so in writing.

Attached to the main trust instrument were several other documents. First, there was a signed and witnessed document, also dated May 16, 1998, entitled "Assignment of Property to Trust," which provided:

"Grantor(s): Jack B. Peterson, does (do) hereby sell, transfer and convey unto Jack B. Peterson, as Trustee(s) of

Pamela King/Paula Samuel, a revocable living trust dated May 16, 1998.

"The property transferred consists of: Real Estate Pick up Truck U.S. Bank Checking Account Misc. Personal Property

"To have and to hold for the benefit of the trust, its beneficiaries, successors and assigns. Seller warrants to defend the sale of property against all and every person claiming an adverse interest to same."

Second, also attached was a "Schedule of Assets," which provided:

| "Date of transfer | Assets transferred to trust | Form of ownership | Tax Base at date of transfer | Fair Market Value on date of transfer |
| --- | --- | --- | --- | --- |
| "05-16-98 | Real Estate 17670 Edmundson Rd. Sisters, Or. 97759 | individual | $96,965.00 | $121,530.00 |
| "05-16-98 | 1977 1/2 ton Chevrolet Pick Up Truck | individual | | $ 6,000.00 |
| "05-16-98 | Personal Property | | | unknown |
| "05-16-98 Acc # * * * | U. S. Bank Sister[s], Or. | Individual | varies | |
| "05-16-98 Acc # * * * | American Century Investments | Individual | $39,189.274 [*sic*] | |
| "05-16-98 Acc # * * *" | Franklin Federal Money Fund | | $17,029.389 [*sic*] | |

(Footnote omitted.)

Also attached was a deed demonstrating that Peterson had sold certain real estate in 1977 and that the sale of that property had been duly recorded shortly thereafter. Finally, attached was a computer-generated document that appears to be a 1998 tax statement, addressed to Peterson, describing his property and residence in Sisters as having a total real market value of $121,530.

The trust and the above-described attachments were recorded by the county clerk on June 8, 1998.

On April 5, 1999, Peterson executed a will that indicated that he had one daughter, defendant King, and left the residue of his estate after payment of expenses solely to defendant. The will made no mention either of plaintiff or of the trust.

Peterson died on August 16, 2000, and defendant petitioned for probate of Peterson's will and was appointed personal representative. Plaintiff filed a claim against the estate for 50 percent of the assets, and defendant disallowed the claim. In particular, defendant took the position that Peterson's will had effectively revoked the trust and, in all events, Peterson had never transferred real estate or other titled assets to the trust. Plaintiff then filed a complaint that alleged that Peterson's will had been procured by undue influence and also sought a declaration of plaintiff's rights under the trust.

The case proceeded to trial, and the court, over plaintiff's objections, admitted certain extrinsic evidence,[1] including hearsay statements ascribed to Peterson, pertaining to Peterson's intent. At the close of plaintiff's evidence, the trial court directed a verdict in defendant's favor on the undue influence claim.[2] Ultimately, in determining plaintiff's rights under the trust, the court rendered the following pertinent findings of fact and conclusions of law:

---

[1] The particular nature of that evidence and the propriety of the trial court's consideration of that evidence are described below.

[2] Plaintiff does not challenge that disposition on appeal.

## "Findings of Fact

"1.    That Jack Peterson executed a document labeled 'Revocable One Party Living Trust,' plaintiff's Exhibit 1 (the 'Trust').

"2.    That Jack Peterson took no other action to transfer titled assets from his individual ownership to ownership by the Trust.

"3.    That Jack Peterson did not intend that the Trust own or control his titled assets.

"* * * * *

## "Conclusions of Law

"1.    That the Trust was not revoked by Jack Peterson's subsequent will, plaintiff's Exhibit 2.

"2.    That Jack Peterson never transferred his titled assets into the Trust and such assets are not governed by the terms of the Trust. * * *

"* * * * *

"3.    That Jack Peterson's non-titled personal property was transferred into the Trust and such property shall be distributed equally between the two Trust beneficiaries, Paula Samuel and Pamela King, pursuant to the terms of the Trust."

(Boldface in original.) The court ordered defendant to administer the trust consistently with the court's findings. The court further concluded that defendant was entitled to judgment in her favor on the declaratory relief claim, denominated defendant the prevailing party, and awarded her costs.

On appeal, plaintiff raises two assignments of error, challenging (1) the court's declaration that various titled assets were not included in the trust; and (2) the court's determination that defendant was the prevailing party, with the consequent award of costs. Defendant responds that Peterson never transferred titled assets into the trust and, particularly, that the trial court's reliance on extrinsic evidence with respect to Peterson's intent was appropriate because the terms of the trust instrument were ambiguous. Alternatively, defendant argues that, even if the titled assets were made part of the trust, she is nevertheless entitled to

prevail because the trial court erred in concluding that Peterson's subsequent will did not effectively revoke the trust.

■ Before addressing the merits of plaintiff's arguments, we dispose of defendant's contention that she is entitled to prevail because Peterson's will effectively revoked the trust. As noted, the trial court explicitly ruled to the contrary and further directed defendant, as successor trustee, to administer the trust by rendering an equal distribution of Peterson's "non-titled personal property" as a trust asset.

Defendant's challenge to the court's "nonrevocation" ruling is not cognizable because defendant did not file a cross-appeal. At first blush, it might seem that defendant's contention is merely an alternative basis for affirmance or, at most, a cross-assignment of error. *See* ORAP 5.57.[3] However, defendant's contention is, in substance, the sort that must be raised by way of a cross-appeal because, if successful, it would yield relief different from that afforded under the trial court's judgment. *See Ricciardi v. Frink,* 133 Or App 436, 447, 891 P2d 1336, *rev den,* 321 Or 268 (1995) (where the respondent's contention would, if successful, require modification of the judgment, yielding "relief the trial court expressly denied, [the respondent] was obliged to file a cross-appeal"). That is so because defendant contends that Peterson's subsequent will completely revoked the trust. If that contention were true, plaintiff would not be entitled to any of Peterson's assets, *viz.,* the one-half of the nontitled

---

[3] ORAP 5.57 provides, in part:

"(1) A respondent must cross-assign as error any trial court ruling described in subsection (2) in order to raise the claim of error in the appeal.

"(2) A cross-assignment of error is appropriate:

"(a) If, by challenging the trial court ruling, the respondent does not seek to reverse or modify the judgment on appeal; and

"(b) If the relief sought by the appellant were to be granted, respondent would desire reversal or modification of an intermediate ruling of the trial court."

(Footnote omitted.) Defendant's brief does not style her challenge to the trial court's "nonrevocation" ruling as a cross-assignment or otherwise comply with the requisites of ORAP 5.57 and, particularly, ORAP 5.57(3). In all events, as described below, defendant's contention could not properly be characterized as a cross-assignment of error because defendant's contention, if correct, would require modification of the trial court's judgment.

personal property that the trial court ordered distributed to plaintiff under the trust; defendant would be entitled to everything. Given that putative result, defendant's failure to file a cross-appeal precludes our consideration of her present challenge to the court's "nonrevocation" ruling. *Id.*[4]

We turn, then, to plaintiff's arguments concerning the trial court's construction of the trust instrument. Plaintiff argues that the trial court erred in admitting and relying on extrinsic evidence of Peterson's intent as to what assets were included in the trust, because the trust unambiguously included the assets, including the titled assets, mentioned in the "Assignment of Property to Trust" and listed more specifically in the "Schedule of Assets." Plaintiff asserts that, when the grantor and the trustee are the same individual, no documents specifically conveying titled property from the grantor to the trustee are necessary. *See Winters et al. v. Winters et al.*, 165 Or 659, 667, 109 P2d 857 (1941).

Defendant responds that the trust instrument required Peterson to change title to assets from his name individually into his name as trustee before the assets could be considered part of the trust. In particular, defendant points to the instrument's provision that "the Grantor agrees to execute such further instruments as shall be necessary to vest the Trustee with full title to the property[.]" Defendant contends that plaintiff's construction of the document ignores that "unambiguous" language and that, at least, that language creates an ambiguity permitting reference to extrinsic evidence of Peterson's intent. In that regard, defendant argues that, because Peterson, as the grantor, never executed such "further instruments," he never intended to, and in fact did not, make his titled assets a part of the trust. In support of her interpretation, defendant points to extrinsic evidence that she presented in the form of testimony from Joseph Winter, a friend of Peterson. When asked if he knew of

---

[4] *See also McKinley v. Owyhee Project North Board of Control*, 103 Or App 253, 268, 798 P2d 673, *mod in part on other grounds*, 104 Or App 576, 802 P2d 677 (1990), *on recons*, 106 Or App 366, 807 P2d 338, *rev den*, 311 Or 426 (1991) (If the plaintiffs were to prevail on their "cross-assignment of error," they "could recover *all* of their damages. Thus, plaintiffs seeks to alter the judgment, not to sustain it. Accordingly, we do not reach the merits of plaintiffs' cross-assignment." (Emphasis in original.)).

Peterson's trust, Winter replied, "[Peterson] said that he had started a trust, had—but that he had put nothing in it because he hadn't decided whether he wanted to do that or not."[5]

When a trust instrument is fully integrated and is not ambiguous on its face, extrinsic evidence is not admissible to establish the grantor's intent. *Jarrett v. U. S. National Bank*, 81 Or App 242, 246, 725 P2d 384 (1986), *rev den*, 302 Or 476 (1987). Whether a term in an agreement is ambiguous is a question of law. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). An ambiguity is presented only when the language of the agreement is reasonably capable of more than one plausible interpretation. *See, e.g., Thomas Creek Lumber & Log Co. v. State Forester*, 157 Or App 204, 212, 970 P2d 659 (1998), *rev den*, 328 Or 365 (1999).

We note at the outset that, as plaintiff contends, when an "owner of property declares himself trustee of property, a trust may be created without a transfer of title to the property." *Winters*, 165 Or at 667 (quoting *Restatement of the Law, Trusts* § 17 (1935)). Here, Peterson was both the settlor and the initial trustee. Consequently, so long as Peterson actually transferred the titled *assets* to the trust, it was unnecessary for him to take further action formally transferring *title* of those assets to the trust. As a matter of law, the conveyance of the property was sufficient. The question thus reduces to whether, by executing the trust instrument and related documents, Peterson did, in fact, convey the titled assets to the trust.

We conclude that the trust instrument and attached documents described above unambiguously express and effect Peterson's intent, as grantor, to convey his titled assets listed in the "Schedule of Assets" to the trust as of the date he executed the trust instrument. To the extent that the trial court concluded either that the trust unambiguously excluded those titled assets or that the trust was ambiguous, permitting reference to extrinsic evidence of the grantor's intent, the trial court erred.

---

[5] Winters was not asked, nor did he volunteer, any information about when he had discussed the trust with Peterson. He indicated that he had never seen the trust documents and did not know that they had been recorded.

As noted above, the grantor declared his intent to create a trust "of the property described in Schedule A hereto" and agreed to "execute such further instruments as shall be necessary to vest the Trustee with full title to the property, and the Trustee agrees to hold the Trust Estate, IN TRUST, NEVERTHELESS." Thus, Peterson, as grantor, expressed his intent to place titled assets in the trust and Peterson, as trustee, agreed to treat those assets as part of the trust estate regardless of whether "further instruments" had been executed to vest Peterson as trustee with full title to the property. Still, that language alone does not unambiguously indicate *when* the grantor intended to place titled assets in the trust. However, two of the attached documents unambiguously establish the grantor's intent in that regard.

First, the "Assignment of Property to Trust," dated and signed by Peterson on May 16, 1998, states that Peterson, as grantor, "does * * * hereby sell, transfer and convey unto" Peterson, as trustee, a trust dated May 16, 1998, and "[t]he property transferred consists of: Real Estate Pick up Truck[,] U.S. Bank Checking Account[,] Misc. Personal Property." The word "hereby" indicates a present intent, and not a future intent. *See Black's Law Dictionary* 730 (7th ed 1999) (defining "hereby" as "[b]y this document; by these very words").

Second, any lack of precision in the property description in the "Assignment of Property to Trust" is resolved by reference to the "Schedule of Assets," which was also attached to the trust instrument.[6] That schedule not only lists with particularity the grantor's titled assets, but also identifies "May 16, 1998," as the "date of transfer" of those assets to the trust.

■   We note that, as defendant points out, that document is titled "Schedule of Assets," and not "Schedule A," as referenced on the first page of the trust instrument, *viz.*, "property described in Schedule A hereto annexed." However, that difference in denomination is immaterial. In form and substance, the "Schedule of Assets" accomplishes precisely the

---

[6] Between those two documents is a single page, "Schedule of Beneficiaries and Distributive Shares," indicating that plaintiff and defendant were each to be a 50-percent beneficiary of the trust.

same function ascribed to "Schedule A": It describes with particularity the assets transferred to the trust and expressed Peterson's present intent to transfer those assets. Moreover, as with the putative "Schedule A," the "Schedule of Assets" was recorded with and "annexed hereto" to the trust instrument. Finally, the trust instrument includes no reference to a "Schedule of Assets" as a document separate or distinct from "Schedule A." In short, the only plausible conclusion is that the "Schedule of Assets" *is* "Schedule A."

■     Defendant asserts, however, that there is one other source of ambiguity as to what assets were to be included in the trust. As noted above, the "Schedule of Assets" indicates that real estate located at a specific address in Sisters, Oregon, was transferred to the trust as of May 16, 1998. It is undisputed that the property at that location belonged to Peterson at the time the trust was created and also at the time of his death. However, also included with the trust documents—as an attachment separate from the "Schedule of Assets"—was a deed showing that Peterson had *sold* certain *other* real estate in 1977. Defendant contends that the attachment of that deed creates an ambiguity as to which real property Peterson intended, or believed, he was conveying to the trust. Defendant further asserts that that ambiguity, at least, permits resort to extrinsic evidence.

We disagree. The "Assignment of Property to Trust" states that Peterson, as grantor, was conveying "real estate" to the trust. The only "real estate" that Peterson owned at the time that he executed the trust instrument was the "real estate" identified and described in the "Schedule of Assets." Any interest in the land sold in 1977 that Peterson may have had at the time of the creation of the trust was in the form of the right to receive payments from the purchasers of that land. Thus, although the attachment of the deed for the property conveyed in 1977 may have evinced Peterson's intent that income from that sale should be treated as a trust asset,[7] that attachment in no way detracts from Peterson's clear

---

[7] By the terms of the trust, Peterson as trustee could use any such income for the benefit of Peterson as grantor during his lifetime: "During the lifetime of the Grantor, the Trustee may pay to or apply for the benefit of the Grantor all the net income from the Trust."

intent to convey to the trust the real estate that he, in fact, owned.

In sum, we conclude that the trust instrument and attached documents unambiguously establish Peterson's intent, as grantor, to include his titled assets, as listed specifically in the "Schedule of Assets," in the concurrently established trust.

Finally, we reject defendant's argument that, even if the titled assets were originally made a part of the trust, Peterson withdrew those assets from the trust. Defendant acknowledges that Peterson did not comply with the provision in the trust requiring that such a withdrawal of assets from the trust be done in writing.[8] Defendant further acknowledges that there is no authority under Oregon law permitting assets to be withdrawn from a trust in a manner other than the one specified in the trust instrument. Defendant's argument to the contrary is unavailing.

We thus conclude that the trust included the titled assets listed in the "Schedule of Assets." That conclusion, in turn, affects the trial court's designation of defendant as prevailing party and the consequent award of costs, which is the object of plaintiff's second assignment of error. Accordingly, the trial court's designation of prevailing party and award of costs must be vacated and remanded.

Reversed and remanded with instructions to enter declaratory judgment in plaintiff's favor in accordance with this opinion; designation of prevailing party and award of costs vacated and remanded; otherwise affirmed.

---

[8] Paragraph 3 of the trust instrument provides, in part:

"The Grantor may at any time during his lifetime and from time to time, withdraw all or any part of the principal of this Trust, free of trust, by delivering an instrument in writing duly signed by him to the Trustee, describing the property or portion thereof desired to be withdrawn."