Argued and submitted September 27, University of Oregon School of Law, Eugene, affirmed December 15, 2004

In the Matter of the Estate of
Opal Baron, Deceased.

GOODWILL INDUSTRIES,
*Appellant,*

*v.*

U.S. BANK,
Trustee of the Opal Baron Trust;
Scott Delay, Attorney in fact for Juanita Anderson;
Bobbie Neal Hood; Sharon Louise Hood Wilken;
Sarah Lou Hood Pruitt; and Weldon Floyd Hood,
*Respondents.*

52-03-06100; A122401

103 P3d 1165

James E. Mountain, Jr., argued the cause for appellant. With him on the opening brief were William F. Gary and Harrang Long Gary Rudnick, P.C. On the reply brief was Douglas S. Chiapuzio.

Joel S. DeVore argued the cause for respondent U.S. Bank. With him on the brief were Varner Jay Johns III and Luvaas Cobb.

Marc D. Perrin argued the cause and filed the brief for respondent Scott Delay.

No appearance for respondents Bobbie Neal Hood, Sharon Louise Hood Wilken, Sarah Lou Hood Pruitt, and Weldon Floyd Hood.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Bearden, Judge pro tempore.

BREWER, C. J.

## BREWER, C. J.

Goodwill Industries, Inc. (Goodwill), appeals from a final order of the trial court in a proceeding under ORS 128.135(2)(c).[1] In that proceeding, U.S. Bank (trustee), as trustee of the Opal Baron Trust (the trust), petitioned the circuit court for an order interpreting a trust, declaring the rights of beneficiaries, and authorizing the trustee to make final distribution of the trust. We affirm.

■     We review *de novo*[2] the evidence underlying a final order interpreting a trust instrument and declaring the rights of beneficiaries. *U. S. National Bank v. Duling*, 39 Or App 329, 331, 592 P2d 257 (1979). Opal Baron was one of four sisters. In 1991, after one of the sisters, Lucy Taylor Hood, died, Baron and her husband moved to Lane County. Baron's sister, Leona Mello, also moved to Lane County, where the fourth sister, Juanita Anderson, already resided. Baron and Mello moved to Lane County so that the three remaining sisters could live closer together in their later years.

In October 1997, Opal Baron executed and funded the trust. In crafting the trust, Baron's attorney was

---

[1] ORS 128.135(2) provides, in part:

"Any beneficiary of a trust or the trustee thereof may petition the circuit court in any county where trust assets are located or where the trustee resides for the purpose of any of the following:

"* * * * *

"(c)  Obtaining authority, approval or instructions on any matter concerning the interpretation of the trust or the administration, settlement or distribution of the trust estate, including approval of a proposed exercise or nonexercise of a discretionary power under ORS chapter 129."

[2] The legislature amended ORS 19.415(3) in 2003. Or Laws 2003, ch 576, § 88 ("Upon an appeal from a [*decree*] **judgment** in **a case that constituted a** suit in equity **under common law**, the Court of Appeals shall try the cause anew upon the record." (Additions in boldface; deletions italicized in brackets.)). We need not decide whether the 2003 amendments to ORS 19.415(3) affect our standard of review because those amendments apply only to the appeal of judgments that were entered on or after January 1, 2004. *See* Or Laws 2003, ch 576, § 90a ("The amendments to ORS * * * 19.415 * * * by sections 85 to 89 of this 2003 Act apply only to the appeal of judgment entered on or after the effective date of this 2003 Act. Any appeal of a judgment entered before the effective date of this 2003 Act shall continue to be governed by the law in effect on the day immediately preceding the effective date of this 2003 Act."). Based on the plain meaning of the text of Oregon Laws 2003, chapter 576, section 90a, we apply the 2001 version of ORS 19.415(3) in this case.

concerned that the value of her estate exceeded the amount that could be transferred at death without taxation. Baron's attorney testified that Baron intended that Goodwill would receive only that part of the trust estate, if any, that otherwise would have been taxable.

The trust provided for distributions of income and principal to Baron during her lifetime. The trust contained two provisions for distribution on Baron's death: specific gifts of personal property at paragraph 9 and residuary gifts at paragraph 10. Paragraph 10A of the trust provided:

"After my death, and after the payment and distributions authorized in the preceding paragraphs, my Trustee shall distribute the remaining balance of the Trust Estate as follows:

"(1) An amount of the Trust Estate (the tax free amount) which amount will result in the gift to my sisters, LEONA MELLO and JUANITA ANDERSON, being the largest amount possible that will still result in no United States estate tax being imposed, after allowing for any state or federal tax credits available to offset against decedent's estate, distributed as follows:

"a. $500 to JUANITA ANDERSON; and

"b. The remainder of the tax free amount to LEONA MELLO.

"(2) The remaining balance of the Trust Estate, after the preceding payment and distributions authorized in this paragraph, to the Goodwill Industries of Lane County (Federal Tax Identification No. 930572370).

"(3) My trustee shall prefer my sisters' wishes and beneficial interests above and before those of Goodwill Industries of Lane County."

Paragraph 11 provided, in part:

"If in any circumstances not provided for in this instrument there is any portion of the Trust for which there is no named or described beneficiary, the portion shall be distributed to those persons then living who would be entitled to receive my estate as provided by the intestate laws of the State of Oregon then in effect."

Mello died in July 2000. When she died, Mello was unmarried and had no living issue. Baron died in December 2002, leaving no issue. From the date of Mello's death to the date of her own death, Baron did not amend or revoke the trust, and it was in full force and effect when she died. Baron was survived by Anderson and the issue of Hood; the latter sister was not mentioned or referred to in the trust. Contrary to original expectations, Baron's estate was not large enough to be subject to taxation.

After Baron died, the trustee asked the trial court to interpret the trust so as to determine the disposition of the residuary portion of the trust estate. The court held an evidentiary hearing and issued an order concluding that Goodwill was not entitled to share in any portion of the estate that was exempt from taxation. Rather, the court ordered the distribution of one-half of the residuary estate to Anderson and the remaining half to Hood's issue. In doing so, the court determined that "the trust provisions are ambiguous," and it considered extrinsic evidence in resolving the ambiguity.

■ Goodwill assigns error to the trial court's distribution order, asserting that it was entitled under the terms of the trust to receive the entire residuary estate, except for the $500 gift to Anderson. In addition, Goodwill assigns error to the trial court's conclusion that the trust was ambiguous and its consequent consideration of the testimony of Baron's attorney regarding Baron's intent in designating Goodwill as a contingent beneficiary of the trust. We consider the assignments of error in reverse order.

■ When a trust instrument is fully integrated and is not ambiguous on its face, extrinsic evidence is not admissible to establish the grantor's intent. *Jarrett v. U. S. National Bank*, 81 Or App 242, 246, 725 P2d 384 (1986), *rev den*, 302 Or 476 (1987). Whether a term in a trust instrument is ambiguous is a question of law. *Samuel v. King*, 186 Or App 684, 692, 64 P3d 1206, *rev den*, 335 Or 443 (2003). An ambiguity is presented only when the language of the instrument is reasonably capable of more than one plausible interpretation. *Id.* In determining whether an ambiguity exists, we "look to the entire trust agreement and construe it in accordance with the trustor's intent, and, if possible, give effect to

all of its provisions. ORS 42.230; ORS 42.240." *Chipman v. Spitznagel*, 82 Or App 700, 703, 728 P2d 971 (1986).

We agree with the trial court's conclusion that the trust is ambiguous. Paramount among the ambiguities is the question whether the estate tax threshold has any significance for the potential gift to Goodwill. One plausible interpretation of paragraph 10 is that Baron intended Goodwill to receive the entire residue of the estate after any specific bequest to Baron's sisters, even if some portion of the residue was nontaxable. Supporting that interpretation are the provision in paragraph 10A(1) for the distribution of a relatively small amount of the nontaxable portion of the residue to Anderson and the provision in paragraph 10A(2) for the distribution of the remaining balance of the residuary estate to Goodwill, without express reference to the taxability of that balance. Under that interpretation, Goodwill would receive the entire remaining balance of the residuary estate after the $500 distribution to Anderson because Mello's share of the residuary lapsed when she predeceased Baron.

However, that is not the only plausible interpretation of paragraph 10. An alternative interpretation is that Baron intended Goodwill to receive only the taxable amount of the estate after disbursement of the nontaxable amounts to her sisters or her family. In that regard, the trust makes clear that the threshold for taxes was significant to Baron. Paragraph 10A(1) gives "[a]n amount," which is "the tax free amount," to the then-living sisters Anderson and Mello that will be "the largest amount possible that will still result in no United States estate tax being imposed[.]" Of that amount, $500 goes to Anderson, and the remainder of "the tax free amount" goes to Mello. Baron's repeated reference to the estate tax threshold reasonably suggests that it is the determining dividing line for gifts as between the sisters and the charity. If, should Mello predecease Baron, Baron had intended for Goodwill to receive the entire residue except for the $500 gift to Anderson, then the repeated references to the tax threshold arguably would be pointless. In addition, the contingent gift to Goodwill under paragraph 10A(2) is triggered only "after the preceding payment and distributions

authorized in this paragraph[.]" As discussed, those preceding distributions include "[t]he remainder of the tax free amount" under paragraph 10A(1)(b).

Goodwill remonstrates that the terms of paragraph 10 show that, should Mello predecease her, Baron intended to disfavor Anderson and her other family members as against Goodwill. Again, that interpretation is plausible but not conclusive. Paragraph 10A(3) admonished the trustee to "prefer my sisters' wishes and beneficial interests above and before those of [Goodwill]." The word "sisters" is plural. Viewed accordingly, both sisters' beneficial interests are paramount to those of Goodwill.

Paragraph 11 also is relevant. It provided:

> "If in any circumstances not provided for in this instrument there is any portion of the Trust for which there is no named or described beneficiary, the portion shall be distributed to those persons then living who would be entitled to receive my estate as provided by the intestate laws of the State of Oregon then in effect."

Goodwill argues that it is a "named or described" beneficiary of a portion of the trust and that, accordingly, Mello's death did not trigger the operation of paragraph 11. As we previously have determined, however, paragraph 10A plausibly could be interpreted to provide that Goodwill is the named beneficiary of only the taxable portion of the estate, whereas Mello was the beneficiary of a portion of the nontaxable estate. Thus, Goodwill's designation as the named and described beneficiary of its portion would not prevent the failure, on Mello's death, of the gift to the "named and described" beneficiary of Mello's portion. Under that interpretation, paragraph 11 would indicate that Mello's portion must be distributed to Baron's intestate successors, not to Goodwill's portion of the residual taxable estate.

We conclude that the repeated references in paragraph 10A(1) to the estate tax threshold, the reference in paragraph 10A(2) to the "remaining balance of the trust estate" after the "distributions authorized in this paragraph," the provision in paragraph 10A(3) directing the trustee to prefer the beneficial interests of Baron's sisters over those of Goodwill, and paragraph 11, awarding failed gifts to Baron's

intestate successors, combine to create a plausible competing interpretation of paragraph 10A that renders it, as pertinent here, ambiguous. Accordingly, the trial court did not err in considering extrinsic evidence of Baron's intent in regard to the distribution of her residuary estate.

■ That extrinsic evidence defeats Goodwill's challenge to the order of distribution. The evidence showed that the notion of a charitable gift came not from Baron but from her attorney. The attorney told Baron that he was concerned about the estate tax threshold and that there was a way "to avoid having funds go to taxes." Without contradiction, the attorney testified that Baron did not intend to give any portion of her nontaxable estate to Goodwill. The attorney testified that, if any specific gift were to fail, Baron intended that the gift would revert to her heirs. The attorney also explained that paragraph 10A(3) was a standard provision in his estate planning practice that he used whenever a trustor made a charitable gift, to make clear that the charitable gift is an "afterthought as an alternative to the money going for taxes." That evidence is conclusive.

In sum, the trial court correctly determined that the trust was ambiguous with respect to the distributive scheme for Baron's residuary estate, and it properly resorted to extrinsic evidence in resolving that ambiguity. Taken together, the terms of the trust and the extrinsic evidence established that Baron intended to prefer her family members over Goodwill with respect to any nontaxable portion of her estate. Therefore, the trial court did not err in entering the challenged order of distribution.

Affirmed.