Argued and submitted January 23, 2006, affirmed March 28, 2007

In the Matter of the Trust of
Leo L. Howard, Deceased.

Coy HOWARD,
Co-Trustee (former)
and Remainder Beneficiary,
*Appellant,*

*v.*

Marcene A. HOWARD,
Co-Trustee (former)
and Income Beneficiary,
*Respondent.*

CV 03-0066; A123335

156 P3d 89

Stephen L. Griffith argued the cause for appellant. With him on the briefs were Charles F. Adams and Stoel Rives LLP.

G. Frank Hammond argued the cause for respondent. With him on the brief were David K. McAdams, Lindsay R. Kandra, and Cable Huston Benedict Haagensen & Lloyd LLP.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

This appeal arises from a dispute between the income beneficiary and a remainder beneficiary of trusts established by the late Leo Howard. Marcene Howard, the income beneficiary for life, is Leo's widow; Coy Howard, the remainder beneficiary, is Leo's son.[1] Coy contends that the trial court erred by instructing the trustee not to consider Marcene's other assets in administering and making investment decisions for the trust. We review the evidence *de novo*, *Goodwill Industries v. U.S. Bank*, 196 Or App 556, 559, 103 P3d 1165 (2004), and affirm.

Leo and his first wife had three children, including Coy. After his first wife's death, Leo married Marcene, who had two children from her prior marriage. Leo and Marcene married in 1961. They had no children together.

Leo and Marcene did their estate planning together. In 1992, they went to an attorney, Fredricks, for the preparation of trust agreements to replace their earlier wills. Those trust agreements gave the trustee discretion to invade the principal when necessary to support the surviving spouse. Leo and Marcene transferred 60 percent of their property to Leo's trust and 40 percent to Marcene's, so that 60 percent of the total estate would go to Leo's three children and 40 percent to Marcene's two children, resulting in an equal share for each child.

In 1999, Leo and Marcene amended the 1992 trust agreements in their entirety, and Leo's trust instrument made the following provisions. After Leo's death, in the event that Marcene survived Leo, his pecuniary assets were to be divided into two trusts, the Leo L. Howard Family Trust (the Family Trust) and the Howard Marital Trust (the Marital Trust). The trustee was to distribute a "non-marital share"— the maximum amount that could pass free of the federal estate tax—to the Family Trust and the residue to the Marital Trust. The trust instrument states Leo's intention that

---

[1] For clarity, we refer to Leo Howard, Marcene Howard, and Coy Howard by their first names. The other remainder beneficiaries are Leo's surviving daughter and the issue of Leo's other daughter, who predeceased him; they are not parties to this proceeding.

the marital share would qualify for the federal estate tax marital deduction and directs that the trust instrument be interpreted consistently with that intent. The trust instrument further provides that Marcene may require the trustee "to make any unproductive property in any marital trust productive or to convert it to productive property within a reasonable time."

The trust instrument provides that, during Marcene's lifetime, the net income of both trusts is to be distributed to her, and no distributions of principal are to be made from either trust. On Marcene's death, the residue of the Marital Trust is to be distributed to the Family Trust, which is to be divided among Leo's surviving children and the surviving issue of his children who predecease Leo and Marcene. The trust instrument states, "I intentionally make no provision herein for any of my stepchildren."

Some sections of the trust instrument explicitly refer to consideration of the beneficiaries' needs and other resources. Article 3.2 provides, in the event of Leo's incapacity during his lifetime, for distribution of income and principal necessary to meet his or Marcene's needs. Article 8.3(b) requires the trustee to retain the share of any surviving issue of any deceased child of Leo until the issue turns 25; until that time, the trustee is to pay the beneficiary "such amounts of income and principal of the share as [the t]rustee shall determine to be necessary for his or her health, education, support and maintenance." Article 10.5 states, "In making discretionary distributions, [the t]rustee may, but is not required to, consider any other income, support, or property available to the beneficiary."

Another section of the trust instrument addresses the comparative interests of the various beneficiaries. Article 11.19 states, "My support, comfort, companionship, enjoyment and desires shall be preferred over the rights of the remaindermen. After my death, in the event my spouse survives me, my spouse's support, comfort, companionship, enjoyment and desires shall be preferred over the rights of the remaindermen."

The trial court admitted, as evidence regarding the 1999 amendments, notes and testimony by Fredricks, who

prepared the trust instrument. In a file note about the 1999 amendments, Fredricks memorialized a discussion that he had had with Leo and Marcene. Fredricks wrote that they

> "looked at the fact that the estates ha[d] grown considerably over the last few years and * * * determined * * * that there be no distributions of principal for the benefit of the spouse after one of the spouses is deceased.

> "Leo and Marcene both felt that the survivor would have substantial assets of his or her own in their own trust over which they could draw upon the principal, and also, would be receiving all of the net income of both the family trust and the marital trust which should be more tha[n] sufficient to take care of the survivor."

Fredricks testified that Article 11.19 of the trust instrument was included because the 1999 amendments eliminated discretionary distributions of principal and both Marcene and Leo "had a central desire to make sure that the other was adequately provided for." Fredricks had explained to Leo and Marcene that Oregon law usually requires a trustee to be impartial between the income beneficiary and the remainder beneficiaries and that Article 11.19 overrides that rule and "slants * * * questionable decisions in favor of the income beneficiary, with the thought being that basically they were interested in first providing for one another and then for the [remainder beneficiaries]."

Fredricks never told Leo and Marcene that the trustee could not consider the surviving spouse's other resources when applying Article 11.19. However, in his view, Article 11.19 did not provide for Marcene's needs only, nor did it require the trustee to consider Marcene's assets in providing for her. Fredricks also explained to Leo and Marcene that, after the death of one spouse, there would be no way to continue balancing the assets in Leo's and Marcene's respective trusts to maintain the earlier 60-40 split.

Leo died in January 2002. As pertinent here, he was survived by Marcene, two of his children, and the three children of his deceased daughter. Marcene and Coy served as cotrustees of Leo's trusts but came to disagree about the interpretation of certain trust provisions. Marcene petitioned

for an interpretation of the trusts' terms and for the proper administration of their assets.

Marcene and Coy resigned as trustees, and an institutional trustee was appointed. Before the hearing on the petition, Marcene and Coy resolved some of their differences, with the resulting entry of a stipulated order regarding trust investment policies.

After the hearing, the trial court concluded that, although Marcene does not have the right to control the operation of the trusts, the trustee must consider her support, comfort, and desires, in light of the trust instrument's terms; when the interests of Marcene and the remainder beneficiaries conflict, her interests take precedence. The court also determined that the growth of the corpus was not the trusts' primary object. The court instructed the trustee that Marcene's "personal income and assets and financial posture * * * [are] not relevant to the administration of the trust and [are] to have no bearing whatsoever on the considerations of the [t]rustee[.]" On appeal, Coy assigns error only to that last instruction.

■■■ Although a trustee owes a duty to any remainder beneficiaries as well as to the life income beneficiary, the trustee must carry out those duties in light of any preference expressed in the trust instrument. *Windishar v. Windishar*, 83 Or App 162, 166-67, 731 P2d 445 (1986), *adh'd to on recons*, 84 Or App 580, 735 P2d 10 (1987). We construe trust instruments in accordance with the trustor's intent by looking at the entire instrument and, if possible, giving effect to all of the instrument's provisions. *Chipman v. Spitznagel*, 82 Or App 700, 703, 728 P2d 971 (1986). Here, we conclude that the trial court was correct in its determination that Leo did not intend to require the trustee to consider Marcene's other financial resources when administering the assets of the trusts.

As Marcene points out, the trust instrument requires the trustee to pay all the net trust income to her, without any reference to her other resources or her needs, although Articles 3.2 (governing distributions if Leo had become incapacitated), 6.2(b) and 8.3(b) (governing distributions to a beneficiary who has not attained the age of 25), and

10.5 (governing discretionary distributions) explicitly refer to consideration of the beneficiaries' needs and other resources. That drafting choice appears deliberate: If Leo had wished the trustee to consider Marcene's other resources, the trust instrument demonstrates that he knew how to give such an instruction.

Nonetheless, Coy contends that, unless Marcene's other resources are considered, the trustee cannot comply with Leo's intent to pass the remainder of his estate to his own children and not to provide for his stepchildren. Coy notes the potential for Marcene "(1) to divert as current income proceeds that otherwise would be available to grow principal for Leo's biological issue and (2) through gifts made directly or indirectly out of this income to her own children, to make her biological issue *de facto* [remainder beneficiaries] of the Leo Howard Trust." Marcene concedes that, under the trial court's unchallenged instructions to the trustee, "it is clear that growth of the principal may not be eliminated entirely." She points out, however, that Article 11.19 of the trust instrument makes her "support, comfort, companionship, enjoyment and desires" a higher priority than the rights of the remainder beneficiaries. Marcene contends that an investment strategy focused on preserving assets for distribution to the remainder beneficiaries would not comply with Article 11.19.

We agree with Marcene. The trust instrument states that Leo intended to make no provision for his stepchildren, not that he intended to require consideration of Marcene's other resources or to limit Marcene's income or ability to make gifts to her children. Accordingly, Leo's decision not to provide for his stepchildren circumscribes neither his direction of trust income to Marcene nor, under Article 11.19, his preference for her interests over those of the remainder beneficiaries. Coy's argument simply is too attenuated in light of Leo's other clear directives regarding income for Marcene.

Coy contends, however, that Article 11.19 does not become relevant unless Marcene's needs are not being met. He points to the evidence from Fredricks that Leo thought that Marcene would have more than enough resources from her own trust and from the income of the trusts (without any

distribution of principal from Leo's trusts) to maintain her standard of living. Coy argues that, because Leo simply intended to maintain Marcene's standard of living, her resources are relevant in determining whether the corpus of the trust should be invested to create income rather than protecting or increasing the principal. In addition, he contends that Article 11.19 provides only that the trustee's investment decisions may favor income production when Marcene does not otherwise have sufficient resources to meet her needs.[2]

Marcene responds that the evidence from Fredricks demonstrates that she and Leo primarily wanted to provide for each other, not that Leo intended the trustee to consider her other resources. She emphasizes that Article 11.19 asserts a preference for her "support, comfort, companionship, enjoyment and desires" over the rights of the remainder beneficiaries; those terms are far broader than, for example, Article 6.2(b)'s reference to distributions to a grandchild of the amounts "necessary for his or her health, education, support and maintenance." Again, we agree with Marcene that the plain meaning of the trust instrument does not support Coy's construction, nor does Leo's apparent belief that Marcene would have more than enough resources to provide for her needs prove that Leo intended to require his trustee to take those resources into consideration in administering the trust assets.

Finally, Coy relies on Article 10.5 of the trust instrument, which authorizes the trustee to consider other resources available to the beneficiary when "making discretionary distributions." Although the trustee must distribute "all the net income" of both the trusts to Marcene, Coy reasons that the trustee has discretion in deciding how to invest the assets of the trusts and thus in determining how much income to make available for distribution to Marcene. He

---

[2] Marcene contends that the extrinsic evidence from Fredricks is inadmissible, because the trust instrument is fully integrated and is unambiguous on its face. Coy, for his part, argues that the trust instrument is facially ambiguous and that, in any event, extrinsic evidence is admissible to determine whether a provision is ambiguous. An ambiguity is present if the trust instrument is reasonably capable of more than one plausible interpretation. *Goodwill Industries*, 196 Or App at 561. Here, we conclude that the extrinsic evidence does not support Coy's construction of the trust instrument in any event. Accordingly, we need not decide whether the extrinsic evidence was properly admitted.

concludes that, "[a]lthough Article 10.5 deals directly only with potential distributions of principal to grandchildren * * *, it nonetheless further evidences Leo's intention that, when the [t]rustee's discretion is invoked, the beneficiary's other income and property may be considered." The plain wording of that section, however, points in the opposite direction. Leo authorized the trustee to consider other resources as to "discretionary distributions," not mandatory distributions or other administration of the trust. Had he intended to give the trustee broader authority, he knew how to do so. We conclude that he chose not to. The trust instrument unambiguously provides that Marcene's other resources are not relevant to the administration of the trust, and the trial court therefore did not err in its instruction to the trustee.

Affirmed.