# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Living Trust of:<br><br>CATHERINE P. DAVIS,<br><br>DOUGLAS LANCE DAVIS JR.,<br><br>                Appellant,<br><br>    v.<br><br>PADDY A. COOK, Trustee, and, KIMBERLY BRANDENBURG,<br><br>                Respondent. | No. 54250-1-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

LEE, C.J. — Douglas Lance Davis, Jr.,[1] a contingent beneficiary of the Trust at issue, appeals the trial court's order approving the Trustee's petition to sell a trust asset to Kimberly Brandenburg, also a contingent beneficiary under the Trust. Douglas argues that the trial court erred by admitting extrinsic evidence to determine the Trustor's wishes regarding the sale of the trust asset and in its interpretation of the Trust Agreement. Douglas also argues that the trial court erred in awarding attorney fees under the Trusts and Estates Dispute Resolution Act (TEDRA), chapter 11.96A RCW.

---

[1] We refer to parties with the same last name by their first name for clarity and intend no disrespect.

We hold that the trial court properly admitted extrinsic evidence to interpret an ambiguous term in the Trust Agreement and did not err in interpreting the Trust Agreement. We also hold that the trial court did not abuse its discretion in awarding attorney fees. Therefore, we affirm.

FACTS

A. BACKGROUND & TRUST AGREEMENT[2]

Catherine Davis established the Catherine Patricia Davis Living Trust in 1994, in which Catherine is was the primary beneficiary. Catherine has four living children who are all contingent beneficiaries of the Trust: Douglas Lance Davis, Jr., Kevin Davis, Kimberly Brandenburg, and Paddy Cook.

In 2015, Catherine executed the Catherine Patricia Living Trust, dated July 6, 1994, as Amended and Restated (Trust Agreement). In the Trust Agreement, Catherine appointed herself and Cook as co-trustees. The relevant portions of the Trust Agreement provides that,

**ARTICLE 3**
**Trust Provisions During Lifetime**
. . . .

3.3. **Intention.** The Trustee shall liberally distribute income and principal of the Trust Estate for my benefit and the rights of the successor beneficiaries hereunder shall be considered secondary. The Trust Estate is established to ensure that the best available care and support are provided to me to meet all lifetime needs. All assets of the Trust Estate are to be considered available for that purpose, and the Trustee shall at all times be guided by that purpose and intent.

3.4. **General Directions to Trustee.** The Trustee shall make every effort to involve me in decision-making regarding both financial matters and personal care. The Trustee shall make every effort to *determine my wishes* and make

---

[2] The facts presented are consistent with the trial court's findings of fact. Other than challenging the trial court's admission of extrinsic evidence, Douglas does not assign error to any of the trial court's findings of fact. Unchallenged findings of fact are verities on appeal. *State Farm Fire & Cas. Co. v. Justus*, 199 Wn. App. 435, 448, 398 P.3d 1258, *review denied*, 189 Wn.2d 1026 (2017).

decisions that conform to them. If I am unable to make my wishes known, the Trustee shall make decisions that the Trustee believes that I would make, bearing in mind that the least restrictive alternatives for living arrangements are desirable so that I may live with the greatest degree of dignity possible.

. . . .

## ARTICLE 13
### Governing Law and Trustee Powers

The interpretation and operation of the trust shall be governed by the laws of the State of Oregon. The Trustee may, without prior authority from any court, exercise all powers conferred by this Trust Agreement or by common law or by any fiduciary powers act or other statute of the State of Oregon · or any other jurisdiction whose law applies to the trust. The Trustee shall have sole and absolute discretion in exercising these powers. Except as specifically limited by this Trust Agreement, these powers shall extend to all property held by the Trustee until actual distribution of the property.

Clerk's Papers (CP) at 27, 36-37 (emphasis added).

Catherine purchased a house in Seattle, Washington in 1993, which later became an asset of the Trust. Catherine purchased the house to provide housing for Brandenburg while she attended college. Catherine had "wished to transfer the Seattle House to . . . Brandenburg since the date of its purchase in 1993." CP at 311.

Brandenburg made regular monthly payments to Catherine for the house totaling $397,600.00 through February 2019. Brandenburg and her husband also spent $93,617.00 in improvements on the house.

In 2014, Catherine wished to sell Brandenburg the house for $312,500.00, with 20% of the purchase price as a gift of equity in the amount of $62,500.00. In 2015, Catherine's health began to decline. Catherine resigned as co-Trustee in 2016. Cook became the sole Trustee with Catherine's resignation.

3

Cook, as Trustee, filed a TEDRA petition in Clark County Superior Court, requesting judicial approval to sell the house to Brandenburg. Douglas filed an objection to the petition.

B.    TRIAL COURT RULINGS

The trial court held a two day bench trial to determine the TEDRA petition, after which the trial court entered findings consistent with the facts discussed above. Specifically, the trial court found that Article Three directs the Trustee to determine Catherine's "wishes" and distribute income to Catherine as directed. CP at 310. The trial court also found that

> [t]he term "wishes" in the context of Article Three of the Trust refers to [Catherine's] current desires as those may arise or change, and because the Trust uses a term that is not frozen at the time of drafting, parole evidence is allowed to show what [Catherine] means her wishes are as they may arise or change post drafting of the Trust.

CP at 311.

The trial court further found that Article 3.4 requires the Trustee to make every effort to involve Catherine in decision making regarding both financial matters and personal care, the "Trust commands the Trustee to determine her mother's wishes and to act accordingly," and clear and convincing evidence showed that Catherine wished to sell the house to Brandenburg. CP at 312. The trial court also found that the house did not need to be sold for the highest price, which would be too narrow a view of the term "wishes."

Based on its findings, the trial court ordered the sale of the house to Brandenburg for $312,500.00, with a gift of equity in the amount of $62,500.00. The trial court also awarded Brandenburg and Cook their attorney fees.

Douglas appeals.

4

No. 54250-1-II

ANALYSIS

A.    TRUST INTERPRETATION

Douglas argues that the trial court erred in ordering the sale of the house.  Specifically,

Douglas argues that the trial court erred by admitting extrinsic evidence to determine Catherine's

wishes and in its interpretation of the Trust Agreement.

1.    Extrinsic Evidence

Douglas argues that the trial court erred in admitting extrinsic evidence to determine

Catherine's wishes because the Trust Agreement is fully integrated and is unambiguous.  We

disagree.

Here, Article 3.4 of the Trust Agreement provides that

[t]he Trustee shall make every effort to involve me in decision-making regarding both financial matters and personal care.  The Trustee shall make every effort to determine my wishes and make decisions that conform to them.  If I am unable to make my wishes known, the Trustee shall make decisions that the Trustee believes that I would make, bearing in mind that the least restrictive alternatives for living arrangements are desirable so that I may live with the greatest degree of dignity possible.

CP at 27.  By creating a trust in which Cook would have to consider her wishes, which are not

expressed in the Trust Agreement, Catherine deliberately introduced a vague term that is

susceptible to multiple interpretations.  As the trial court recognized, the term "wishes" can refer

to wishes frozen at the time of drafting, wishes related to care and support, present wishes, or

wishes that may arise or change in the future.  Because the term "wishes" is subject to more than

one plausible explanation, extrinsic evidence is admissible to resolve its ambiguity.  *Samuel v.*

*King,* 186 Or. App. 684, 692, 64 P.3d 1206, *review denied,* 335 Or. 443 (2003)

5

Douglas cites two cases to support his argument that extrinsic evidence is inadmissible in this case. *See Jarrett v. U.S. Nat. Bank of Oregon*, 81 Or. App. 242, 725 P.2d 384 (1986), *review denied*, 302 Or. 476 (1987); *Wood v. Medical Research Foundation of Oregon*, 130 Or. App. 114, 880 P.2d 952 (Or. App. 1994). Both are distinguishable.

In *Jarrett*, the lessee of certain trust property failed to timely exercise its renewal option. 81 Or. App. at 246. The lease unequivocally stated that "'[t]ime and the punctual and exact performance . . . of the conditions . . . are of the essence of this lease.'" *Id.* (alterations in original). Because the instruments were unambiguous as to the requirement of timely compliance with the lease conditions, the court held that extrinsic evidence of the settlor's contrary intent was inadmissible. *Id*.

In *Wood*, the plaintiffs sought to change the site of their research from the University of Oregon Medical School to St. Vincent's Hospital. 130 Or. App. at 116. The Will at issue directed that certain funds "'be used by the foundation *for the benefit of cardiopulmonary research, development and education under the direction of Dr. Albert Starr and/or Dr. James Wood, or their successors, in the Department of Cardiopulmonary Surgery at the University of Oregon Medical School*.'" *Id* (alterations in original). The court concluded that the Will did not provide any alternative to University of Oregon Medical School as the site of the work. *Id*. Because the Will was unambiguous, the court held that any extrinsic evidence showing that the testator intended other work sites was not admissible. *Id*. at 117-18.

*Jarrett* and *Wood* are unpersuasive because those cases are factually distinguishable from this case. Unlike the precise language used in *Jarrett* and *Wood*, the Trust Agreement here directs the Trustee to "make every effort to determine my wishes and make decisions that conform to

them." CP at 27. The term "wishes" is an ambiguous directive because it is imprecise and open to more than one plausible explanation. *Samuel,* 186 Or. App. at 692.

Because the Trust Agreement included the term "wishes," which is ambiguous, extrinsic evidence was admissible to determine Catherine's wishes. *See Goodwill Industries, Inc. v. U.S. Bank*, 196 Or. App. 556, 564, 103 P.3d 1165 (2003). Therefore, the trial court did not err in admitting extrinsic evidence to determine Catherine's wishes with regards to the sale of the house.

2. Legal Principles for Trust Interpretation

Based on the terms of the Trust Agreement, the interpretation and operation of the Trust Agreement is controlled by Oregon law. Oregon courts review a final order interpreting a trust de novo. *Goodwill Industries, Inc.*, 96 Or. App. at 559.

Oregon courts look to the four corners of the trust agreement to determine the trustor's intent. *U.S. Nat. Bank of Oregon v. Duling*, 39 Or. App. 329, 334, 592 P.2d 257, *review denied*, 287 Or. 1 (1979). Oregon courts construe trust instruments in accordance with the trustor's intent by looking at the entire instrument and, if possible, giving effect to all of the instrument's provisions. *Howard v. Howard*, 211 Or. App. 557, 562, 156 P.3d 89 (2007); *see also* ORS 42.230; ORS 42.240.

Cook, as Trustee, filed her TEDRA petition in Clark County Superior Court; therefore, Washington law governs all procedural matters. RCW 11.96A.090(1), (4). The trial court has "full and ample power" to settle all trusts and trust matters under TEDRA. RCW 11.96A.020(1)(b). "The court may make, issue, and cause to be filed or served, any and all manner and kinds of orders, judgments, citations, notices, summons, and other writs and processes that

might be considered proper or necessary in the exercise of the jurisdiction or powers given." RCW 11.96A.060.

       3.      Trust's Purpose and Trustee's Directions

Douglas argues that "[t]here is only one plausible interpretation of the Trust Agreement—while Catherine is alive, all principal and income must be preserved and used solely to provide the best available care and support of Catherine for the rest of her life." Br. of Appellant at 26. Douglas also argues that "the only reasonable interpretation of the interplay between [Article] 3.3 and 3.4 is that the former trumps the latter." Br. of Appellant at 33. We disagree.

Here, the trial court properly interpreted Article 3.3 and 3.4. *See Duling*, 39 Or. App. at 334. Article 3.3 provides that

> [t]he Trustee shall liberally distribute income and principal of the Trust Estate for my benefit and the rights of the successor beneficiaries hereunder shall be considered secondary. The Trust Estate is established to ensure that the best available care and support are provided to me to meet all lifetime needs. All assets of the Trust Estate are to be considered available for that purpose, and the Trustee shall at all times be guided by that purpose and intent.

CP at 27. Article 3.3 establishes that the primary goal of the Trust is to provide Catherine the "best available care and support." CP at 27. Article 3.4 provides that

> [t]he Trustee shall make every effort to involve me in decision-making regarding both financial matters and personal care. The Trustee shall make every effort to determine my wishes and make decisions that conform to them. If I am unable to make my wishes known, the Trustee shall make decisions that the Trustee believes that I would make, bearing in mind that the least restrictive alternatives for living arrangements are desirable so that I may live with the greatest degree of dignity possible.

CP at 27. Article 3.4 directs the Trustee to determine Catherine's wishes and to make decisions that conform to those wishes.

The Trust Agreement must be construed in accordance with Catherine's intent by looking at the entire instrument and, if possible, giving effect to all of the instrument's provisions. *Howard*, 211 Or. App. at 562. Taken together, the Trust Agreement directs the Trustee to carry out Catherine's wishes so long as those decisions do not jeopardize the primary goal of "best available care and support." CP at 27.

Douglas asserts that "all principal and income *must be preserved* and used *solely* to provide the best available care and support of Catherine for the rest of her life." Br. of Appellant at 26 (emphasis added). This interpretation of the Trust agreement fails for two reasons. First, there is no explicit provision in the Trust Agreement that prevents the Trustee from selling trust property. In fact, the Trust Agreement expressly authorizes the Trustee to sell trust property. *See* ORS 130.725 (2). Second, the Trust Agreement does not say that *all* income must be used solely for the best available care and support for Catherine. Article 3.4 of the Trust Agreement directs the Trustee to determine and carry out Catherine's wishes. The language of the Trust Agreement suggests that Catherine's wishes are not restricted to personal health care, but open to financial decisions as well. Because Douglas's reading would ignore Catherine's wishes as it relates to financial decisions, his interpretation of the Trust Agreement is not persuasive. *Howard*, 211 Or. App. at 562; *see* ORS 42.230; ORS 42.240.

Also, Douglas' argument that Article 3.3 "trumps" Article 3.4 fails because it does not give effect to all provisions of the Trust Agreement. Under Oregon law, trust instruments are construed in accordance with the trustor's intent by looking at the entire instrument and, if possible, giving effect to all of the instrument's provisions. *Howard*, 211 Or. App. at 562; *see* ORS 42.230; ORS

42.240. Douglas' interpretation of the Trust Agreement ignores the provision regarding Catherine's wishes in Article 3.4.

Douglas further argues that the Trust Agreement does not give the Trustee the authority to give a $600,000.00 gift to Brandenburg. Douglas arrives at that figure by taking the difference between the net sales price and the estimated property value of the Seattle house. But Douglas fails to consider that Brandenburg had made mortgage payments and improvements on the house. Also, the unchallenged findings show that Catherine wished to sell Brandenburg the house for $312,500.00, with 20% of the purchase price as a gift of equity in the amount of $62,500.00. Contrary to Douglas' contention, the Trust Agreement allows the Trustee to sell trust property to Brandenburg if that is what Catherine wishes and doing so would not jeopardize the goal of "best available care and support." CP at 27.

Because the trial court's interpretation of the Trust Agreement gives effect to both provisions Article 3.3 and 3.4, we hold that the trial court properly interpreted the terms of the Trust Agreement. *Duling*, 39 Or. App. at 334. Accordingly, Douglas' challenge to the Trust Agreement fails.

B.    ATTORNEY FEES

Douglas argues that the trial court erred in awarding attorney fees to Brandenburg and the Trustee based on the mistaken premise that they prevailed. We disagree.

We review a trial court's decision to award attorney fees under TEDRA for an abuse of discretion. *In re Estate of Black*, 153 Wn.2d 152, 173, 102 P.3d 796 (2004). A trial court abuses its discretion if its decision rests on unreasonable or untenable grounds. *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

10

Under the TEDRA attorney fees provision, the trial court has discretion to award fees and other costs to any party in a trust dispute proceeding. RCW 11.96A.150(1)(a). The court may award any amount it "determines to be equitable." RCW 11.96A.150(1). "In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1). We will not interfere with a trial court's determination to award attorney fees unless there are facts and circumstances clearly showing an abuse of discretion. *In re Estate of Black*, 153 Wn.2d at 173.

Here, Douglas' argument rests on the assumption that the trial court erred in ordering the sale of the house. However, as shown above, the trial court did not err by interpreting the Trust Agreement as allowing for the sale of the house. Because Douglas presents no facts or circumstances showing a clear abuse of discretion, we affirm the trial court's award of attorney fees to Brandenburg and the Trustee. *In re Estate of Black*, 153 Wn.2d at 173.

ATTORNEY FEES ON APPEAL

Douglas requests attorney fees on appeal under RAP 18.1(a) and RCW 11.96A.150. Brandenburg and the Trustee also request attorney fees on appeal under RAP 18.1(a) and RCW 11.96A.150(1). We deny Douglas' request for attorney fees on appeal, but we grant Brandenburg and the Trustee their reasonable attorney fees for defending this appeal.

We may grant an award of reasonable attorney fees on appeal to a party that requests it in its opening brief and as long as applicable law provides for such an award. RAP 18.1(a). RCW 11.96A.150 authorizes reasonable attorney fees in TEDRA actions. RCW 11.96A.150 (1); *In re Estate of Mower*, 193 Wn. App. 706, 729, 374 P.3d 180, *review denied*, 186 Wn.2d 1031 (2016).

Courts may consider any and all factors deemed to be relevant and appropriate in awarding reasonable attorney fees. RCW 11.96A.150(1). Courts generally consider whether a party seeking attorney fees prevailed in the proceeding. *Compare Foster v. Gilliam*, 165 Wn. App. 33, 58, 268 P.3d 945 (2011), *review denied*, 173 Wn.2d 1032 (2012) (awarding attorney fees because the party prevailed) *with In re Guardianship of Lamb*, 154 Wn. App. 536, 549, 228 P.3d 32 (2009), *aff'd* 173 Wn.2d 173 (2011) (denying attorney fees because the party did not prevail). Courts may, but need not, consider whether the litigation benefits the estate or trust involved. RCW 11.96A.150(1); *Mower*, 193 Wn. App. at 729. Courts may also consider whether a case presented "'novel or unique issues.'" *In re Estate of Stover*, 178 Wn. App. 550, 564, 315 P.3d 579 (2013) (quoting *Lamb*, 173 Wn.2d at 198), *review denied*, 180 Wn.2d 1005 (2014).

Here, Douglas is not the prevailing party, so he is not entitled to his attorney fees on appeal. Brandenburg and the Trustee are the prevailing parties. Because Brandenburg and the Trustee are the prevailing parties, we exercise our discretion to award Brandenburg and the Trustee their attorney fees incurred on appeal.

## CONCLUSION

The trial court did not err in admitting evidence to interpret an ambiguous term in the Trust Agreement, did not err in interpreting the Trust Agreement, and did not err in awarding attorney fees to Brandenburg and the Trustee. Therefore, we affirm.

No. 54250-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.