No. 887 December 11, 2024 665

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In re The Binns' Revocable Living Trust for
Joint Trustors, Dean A. Binn and Joyce A. Binn,
u/t/a/d May 25, 2007.

Ted R. DOWNS,
*Plaintiff-Appellant,*

*v.*

Joyce A. BINN,
individually and as Trustee of
The Binns' Revocable Living Trust,
u/t/a/d May 25, 2007;
and Olava D. Goerges, an individual,
*Defendants-Respondents,*

*and*

Emily PRINGLE,
*Interested Person.*

Clackamas County Circuit Court
19PB02236; A177072

Susie L. Norby, Judge.

Argued and submitted February 21, 2024.

Craig R. Berne argued the cause for appellant. Also on the briefs was Jurislaw LLP.

S. Ward Greene argued the cause for respondent. Also on the brief were Trish A. Walsh and Farleigh Wada Witt.

Before Aoyagi, Presiding Judge, Lagesen, Chief Judge, and Joyce, Judge.*

AOYAGI, P. J.

Reversed and remanded.

_____
\* Lagesen, C. J., *vice* Jacquot, J.

**AOYAGI, P. J.**

This case involves a trust dispute. In 2007, a married couple, Dean Binn and defendant Joyce Binn, decided to put their assets into trust and executed a trust instrument that, among other things, named the couple's nephew, plaintiff Ted Downs, as a contingent beneficiary. The trust was to become irrevocable upon the death of "a Grantor." In 2008, Dean Binn died, after which defendant amended the trust instrument several times, removing plaintiff as a beneficiary. Plaintiff brought this action, alleging that the trust became irrevocable upon Dean's death and that any subsequent amendments were void. After a trial, the court concluded that the trust remains revocable and, on that basis, found in defendant's favor on plaintiff's claims. The court also found in defendant's favor on defendant's cross-petition to retroactively modify the trust agreement by, among other things, eliminating the irrevocability provision. Modification was granted under ORS 130.225, to achieve the settlor's tax objectives, and under ORS 130.205, based on unanticipated circumstances. Plaintiff appeals the resulting general judgment, as well as a supplemental judgment awarding attorney fees and costs to defendant.

Plaintiff raises four assignments of error. First, he argues that the trial court erred in dismissing his claims on the basis that the trust remained revocable after Dean's death. Second, he challenges the court's findings regarding Dean and defendant's intent in creating the trust, a subject on which defendant testified at trial. Third, he argues that the court erred in modifying the trust instrument. Fourth, he challenges the award of attorney fees and costs. Defendant defends each of the trial court's rulings.

As explained below, we conclude that the trust instrument unambiguously provides for the trust to become irrevocable upon the death of either grantor. The trust therefore became irrevocable upon Dean's death in 2008. The trial court erred in concluding otherwise and dismissing plaintiff's claims. We further conclude that the trial court lacked authority to modify the trust agreement under ORS

130.225 and ORS 130.205. Accordingly, we reverse both the general and supplemental judgments.[1]

## I.   FACTS

In 2007, Dean Binn and defendant Joyce Binn, a married couple, decided to put their assets into trust. They executed a trust instrument titled the Binns' Revocable Living Trust. The introductory paragraph of the trust instrument states that the trust agreement is "by and between DEAN A. BINN and JOYCE A. BINN (hereinafter called the 'Co-Grantors' or 'Grantor') *** and DEAN A. BINN and JOYCE A. BINN (hereinafter called 'Co-Trustees' or 'Trustee')."

Article 3, which contains the "dispositive provisions," states that, "[d]uring the lifetime of Grantor," the entire net income from the trust is to be paid "to Grantor" or used "for Grantor's benefit." Upon "the death of a Grantor," the trustee may make payments related to "Grantor's last illness" and pay "other liabilities of Grantor and Grantor's estate." How the trust property is to be distributed upon "the death of a Grantor" depends on whether the other grantor remains alive. "In the event the first Grantor to die is survived by his or her spouse," the trustee is to distribute the "contents of Grantor's home and of any vacation property which Grantor may own or reside in at the time of Grantor's death *** to the surviving spouse," then divide the balance of the trust property into two separate trusts, specifically a "Credit Shelter Trust" (detailed in Article 5) and a "Marital Trust" (detailed in Articles 6 and 7). The trustee is to fund the Credit Shelter Trust in "an amount equal to the largest amount that can pass under this Article free from federal estate tax on Grantor's gross estate," and the residue is to be placed in the Marital Trust. Conversely, in the event that "Grantor is not survived by his or her spouse," the trustee is to distribute all personal property to the surviving children

---

[1] Defendant moved to dismiss this appeal as moot, based on plaintiff having not obtained a stay of the general judgment pending appeal and defendant having moved all of the trust assets out of the trust post-judgment. The Appellate Commissioner denied the motion but gave leave to argue mootness again in the merits briefing. Defendant has not persuaded us that the appeal is moot, so we proceed to the merits. *See State v. K. J. B.*, 362 Or 777, 785, 416 P3d 291 (2018) (describing procedure for establishing mootness).

and the balance of the trust property to the Credit Shelter Trust.

As to beneficiaries, Article 5 reiterates that all income from the Credit Shelter Trust is to benefit "the surviving spouse" during "said spouse's lifetime." Then, "[u]pon the death of the last to die," all remaining property in the Credit Shelter Trust "shall be distributed to our son, DEAN C. BINN" (known as Dino) or, if Dino predeceases his parents and leaves no surviving children, is to be given to "nephew, THEODORE RUSSELL DOWNS, and if he is deceased, to his children, share and share alike." Article 9 requires a beneficiary to outlive the grantors by 90 days to collect—if a beneficiary "other than Grantor's spouse dies within ninety (90) days after Grantor's death," that person will be treated as having "predeceased Grantor." As for the Marital Trust, Article 6 reiterates that all income from the Marital Trust is to benefit "Grantor's spouse during said spouse's lifetime." Any property remaining in the Marital Trust upon the surviving spouse's death is to be distributed in accordance with that person's will.

Finally, Article 2 addresses revocability, stating in relevant part:

> "2.1   At any time prior to the death or incapacity of a Grantor, by a duly executed instrument, Grantor, or either of them, may amend this Trust Agreement in any manner, or may revoke this Trust Agreement in whole or in part. *Upon the death or incapacity of a Grantor, this Trust becomes irrevocable.*

> "2.2   In the event of such revocation, any and all trust properties shall forthwith revert to Grantor free of trust. Such instrument of amendment or revocation shall be effective immediately upon its proper execution by Grantor, but, until a copy has been received by Trustee, that Trustee shall not incur any liability or responsibility either for failing to act in accordance with such instrument, or acting in accordance with the provisions of this Trust Agreement without regard to such instrument."

(Emphasis added.)

In April 2008, Dean Binn died at age 76. Notwithstanding the provisions of the trust agreement, defendant,

acting as trustee, did not divide the trust assets into a Credit Shelter Trust and a Marital Trust. She did not do so at the time of Dean's death, nor has she done so at any time since then.

In 2009, Dino died unexpectedly in his forties, leaving no children. Shortly after Dino's death, defendant amended the trust, changing the trust beneficiaries from Dino and plaintiff to defendant's brother and sister-in-law.

In 2012, defendant's brother died, and defendant amended the trust again, making defendant's sister-in-law and Dino's former girlfriend equal beneficiaries.

In 2017, defendant decided to amend the trust again to remove her sister-in-law as a beneficiary. By that time, the attorney who had drafted the 2007 trust instrument and the 2009 and 2012 amendments had retired. Defendant contacted a new attorney, who advised defendant that the trust had become irrevocable upon Dean's death in 2008 and that any amendments after his death were void. Later that same year, defendant called plaintiff to inform him of some "complications" with a trust with which he was involved, which was when plaintiff learned of the trust created by Dean and defendant.

In 2019, defendant contacted another new attorney, who assisted defendant to amend the trust, making Dino's former girlfriend the sole beneficiary.

That same year, plaintiff filed this action, alleging that the trust became irrevocable upon Dean's death in 2008 and that defendant's various purported amendments to the trust instrument since then were void.[2] Plaintiff further alleged that defendant was required under the terms of the trust to fund the Credit Shelter Trust and that, upon defendant's death (assuming that plaintiff survives her by at least 90 days), plaintiff would receive assets from that trust as the named beneficiary.

---

[2] Plaintiff asserts three claims in the operative complaint: Request for Declaratory Judgment, Removal of Trustee and Appointment of Successor Trustee, and Request for Instructions. All three claims were dismissed on the same basis, so we discuss them collectively herein.

Plaintiff moved for summary judgment on his claims, arguing that Section 2.1 of the trust agreement unambiguously provides for the trust to become irrevocable upon the death of "a Grantor," *i.e.*, upon Dean's death in 2008. The trial court denied the motion on the ground that the trust agreement is ambiguous as to whether "a Grantor" refers to each grantor, such that the death of either grantor triggers irrevocability, or refers to both grantors as a singular "marital unit," such that the trust remains revocable until both grantors have died.

Meanwhile, defendant filed a cross-petition to reform or modify the trust instrument, arguing three different bases for modification. First, she asked the court to remove the credit shelter trust provisions and the irrevocability provision pursuant to ORS 130.220, so as "to correct mistakes made by the draftsman." *See* ORS 130.220 ("The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if the person requesting reformation proves by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement."). Second, she asked the court to eliminate the credit shelter trust provisions pursuant to ORS 130.225, so as "to achieve the tax objectives of the Settlors." *See* ORS 130.225 ("The court may modify the terms of a trust to achieve the settlor's tax objectives if the modification is not contrary to the settlor's probable intention. The court may provide that the modification has retroactive effect."). Third, she asked the court to remove the credit shelter trust provisions and the irrevocability provision pursuant to ORS 130.205, "because of unanticipated circumstances," specifically the "[d]eath of Dean C. Binn while only in his 40s." *See* ORS 130.205(1) ("The court may modify the administrative or dispositive terms of a trust or terminate the trust if modification or termination will further the purposes of the trust and the modification or termination is requested by reason of circumstances not anticipated by the settlor. To the extent practicable, the modification must be made in accordance with the settlor's probable intention.").

The case proceeded to a bench trial. Plaintiff put on expert testimony regarding the law as to credit shelter

trusts. The expert explained that a credit shelter trust enables a married couple to maximize their federal estate tax exemptions by placing a portion of their estate in a trust after one spouse dies, which allows that portion to pass to their beneficiaries tax free. The expert further explained that, to obtain the tax benefits of a credit shelter trust, the trust must become irrevocable upon the first spouse's death. As such, reading Section 2.1 as making the trust irrevocable only upon the *second* spouse's death would nullify the federal tax benefits of the credit shelter trust.

For her part, defendant testified that she and Dean had always intended to retain full control of their assets at all times and that any tax benefits from setting up a trust were of secondary importance. Defendant gave testimony in support of her cross-petition to reform the trust agreement based on mistake. She asserted that their attorney had set up the trust incorrectly, that she personally never read the trust agreement and was not informed of its terms, and that Dean never understood its terms. Defendant further testified that they named plaintiff as a contingent beneficiary in the trust agreement only because their attorney said it was necessary, but that they never expected plaintiff to actually receive any money.

At the end of the trial, the court found in defendant's favor on plaintiff's claims. Relying on defendant's testimony regarding her and Dean's subjective intent, the court resolved the perceived ambiguity as to the meaning of "a Grantor," finding that "a Grantor" refers to both grantors together as a single marital unit, such that the trust becomes irrevocable only after the death of both grantors.

The trial court also found in defendant's favor on her cross-petition, but only on two of the three requested bases. The court denied defendant's request for reformation under ORS 130.220 based on alleged errors by the lawyer in drafting the trust instrument. However, the court granted modification under ORS 130.225 "to achieve the tax objectives of the Settlors," specifically ordering elimination of the credit shelter trust provisions. The court also granted modification under ORS 130.205 based on unanticipated circumstances, specifically ordering elimination of the credit shelter trust

provisions and the irrevocability provision. In ordering the modifications, the court emphasized that it was doing so only for "clarity," not because it was actually necessary.

The court entered both a general judgment and a supplemental judgment for attorney fees and costs. Plaintiff appeals both judgments.

## II.   INTERPRETATION OF THE TRUST AGREEMENT

We begin with the issue of whether the trust remained revocable after Dean's death in 2008. The trial court concluded that it did, as a matter of trust interpretation, and dismissed plaintiff's claims on that basis. On appeal, the parties reprise the same arguments that they made below. Plaintiff argues that Section 2.1 of the trust agreement is unambiguous in providing that the trust becomes irrevocable upon the death of either grantor, such that the trust became irrevocable upon Dean's death in 2008. Defendant maintains that Section 2.1 is ambiguous, in that "a Grantor" could plausibly mean both grantors, and she asserts that the trial court properly resolved that ambiguity in defendant's favor based on defendant's testimony regarding her and Dean's intent.

### A.   *Principles Applicable to Interpretation of a Trust Instrument*

When interpreting a trust instrument, "[w]e must look to the entire trust agreement and construe it in accordance with the trustor's intent and, if possible, give effect to all of its provisions." *Chipman v. Spitznagel*, 82 Or App 700, 703, 728 P2d 971 (1986). Whether a term in a trust instrument is ambiguous is a question of law. *Goodwill Industries v. U. S. Bank*, 196 Or App 556, 561, 103 P3d 1165 (2004). A term or phrase is ambiguous "only when the language of the instrument is reasonably capable of more than one plausible interpretation." *Id*.

"When a trust instrument is fully integrated and is not ambiguous on its face, extrinsic evidence is not admissible to establish the grantor's intent." *Samuel v. King*, 186 Or App 684, 692, 64 P3d 1206, *rev den*, 335 Or 443 (2003); *accord King v. King*, 295 Or App 176, 185, 434 P3d 502 (2018),

*rev den*, 364 Or 849 (2019) (same). In other words, in interpreting a trust document, a court cannot rely on "extrinsic evidence to make an unambiguous document ambiguous." *Jarrett v. U. S. National Bank*, 81 Or App 242, 247, 725 P2d 384 (1986), *rev den*, 302 Or 476 (1987).[3]

Conversely, when a trust provision is ambiguous, extrinsic evidence of the grantor's intent may be considered to resolve the ambiguity. *Goodwill Industries*, 196 Or App at 564. In no event, however, may it be used to contradict or vary the terms of the writing. *See Stoddard v. Nelson*, 17 Or 417, 421, 21 P 456 (1889) ("The rule of law is too well settled to admit of controversy, that extrinsic evidence is not admissible to either contradict, add to, subtract from, or vary the terms of a written contract.").

B.  *Interpretation of this Trust Instrument*

Applying the foregoing principles, we agree with plaintiff that the trust agreement is unambiguous. That is, looking at the disputed text in the context of the trust agreement as a whole, we agree that Section 2.1 is reasonably capable of only one interpretation: that, upon the death of either grantor, the trust becomes irrevocable.

The introductory paragraph of the trust agreement states that Dean and defendant will be called "the 'Co-Grantors' or 'Grantor.'" The term "Grantor" is then used throughout the agreement. In a few provisions that are designed to apply while both grantors are living, "Grantor" is used in a way that clearly includes both grantors at the same time. For example, Section 1.1 states that "Grantor

---

[3] In *Jarrett*, we expressly held that, when a trust document is fully integrated and unambiguous on its face, a court cannot consider *any* extrinsic evidence of the settlor's intent, not even extrinsic evidence of the circumstances of trust formation. 81 Or App at 246 ("The court has no occasion to put itself in the settlor's position when it construes a fully integrated, unambiguous trust document, because the intent of the settlor can be ascertained from the face of the document. ORS 42.220 and ORS 41.740 permit a court to consider the circumstances surrounding the execution of an agreement *only* when the agreement is ambiguous on its face or is not fully integrated." (Emphasis in original.)). In that regard, under current case law, the interpretative process is different for fully integrated trust instruments than it is for contracts. *See ACN Opportunity, LLC v. Employment Dept.*, 362 Or 824, 839, 418 P3d 719 (2018) (stating that, in interpreting a contract, the court may consider the circumstances under which it was made in assessing whether the contract is ambiguous).

hereby assigns, transfers and sets over to Trustee the property specified." That logically refers to both grantors at the time of trust execution. Another example is Article 3's provision that the entire net income from the initial trust be paid "to Grantor" or used "for Grantor's benefit" during "the lifetime of Grantor," which, by its own terms, refers to both grantors while both are living, then refers to the surviving grantor after the first grantor's death.

More often, however, "Grantor" is used to refer to only one of the grantors, with the context making clear which one. Articles 4, 5, 6, 7, 9, and 12 in particular include numerous provisions in which "Grantor" or "Grantor's estate" clearly refers to the deceased grantor, while "Grantor's spouse" or "Grantor's surviving spouse" clearly refers to the surviving grantor. For example, Section 5.1 requires the trustee to fund the Credit Shelter Trust that is to be created upon the death of the first grantor in "an amount equal to the largest amount that can pass under this Article free from federal estate tax on Grantor's gross estate." Article 9 provides that any beneficiary "other than Grantor's spouse" will be treated as having "predeceased Grantor" if they die "within ninety (90) days after Grantor's death." Article 12.7 addresses the exercise of trustee powers "[a]fter the death or incapacity of an initial Grantor, and prior to the death of the surviving Grantor[.]" The contextual usage of "Grantor" makes sense, as all of those provisions flow from Article 4, which sets up what is to happen with the trust assets "[i]n the event the first Grantor to die is survived by his or her spouse," versus what is to happen with the trust assets "[i]n the event the first Grantor to die is not survived by his or her spouse."

Whereas most of the trust provisions refer to "Grantor" without a definite or indefinite article (such as "the" or "a"), Section 2.1 refers twice to "a Grantor." It states:

> "At any time prior to the death or incapacity of *a Grantor*, by a duly executed instrument, *Grantor, or either of them*, may amend this Trust Agreement in any manner, or may revoke this Trust Agreement in whole or in part. Upon the death or incapacity of *a Grantor*, this Trust becomes irrevocable."

(Emphases added.)

In context, the use of the phrase "Grantor, or either of them" emphasizes that either grantor may amend the trust agreement while both grantors are alive, while the addition of the singular indefinite article "a" before "Grantor" in two places in Section 2.1 similarly emphasizes that those references are to *either* grantor in the singular.[4]

That interpretation of the plain text is also consistent with the intent of the grantors as reflected in the trust instrument. *See Chipman*, 82 Or App at 703 (we seek to interpret a trust instrument "in accordance with the trustor's intent"); *but see also Jarrett*, 81 Or App at 246 (when a trust document is fully integrated and unambiguous on its face, we must ascertain the intent of the settlor "from the face of the document"). The trust agreement provides that that, upon the death of a grantor, the trust property is to be divided into a Credit Shelter Trust (detailed in Article 5) and a Marital Trust (detailed in Articles 6 and 7). Article 5 contains multiple tax references, including but not limited to Section 5.1's requirement that the trustee fund the Credit Shelter Trust with "the largest amount [of property] that can pass under this Article free from federal estate tax on Grantor's gross estate." Section 6.1 then requires the residue to be placed in the Marital Trust. It is thus clear from the trust agreement that the grantors' intent was to obtain the maximum available federal tax benefits from use of a credit shelter trust—an intent that could only be achieved by making the trust irrevocable upon the first spouse's death.[5] The grantors' intent as evinced in the trust agreement further affirms that there is only one plausible interpretation of Section 2.1.

For all of those reasons, we conclude that Section 2.1 is unambiguous in providing that the trust will become

---

[4] The only other place in the trust agreement that the phrase "a Grantor, or either of them" appears is in Article 11, which similarly provides that, "[a]t any time prior to the death or incapacity of a Grantor, a Grantor or either of them hereby expressly reserves and retains the power" to make changes to the trust instrument. As for "a Grantor," the only other places it appears are in Article 11, as just quoted, and in Section 3.2, which allows the trustee to pay medical and funeral expenses "[u]pon the death of a Grantor."

[5] Defendant does not dispute that, as a matter of federal tax law, the tax savings available through the creation of a credit shelter trust are available only if the trust is irrevocable upon the first spouse's death.

irrevocable upon the death of either grantor. It follows that the trust became irrevocable upon Dean's death in 2008. Accordingly, we reverse the judgment dismissing plaintiff's claims.

### III.   TRUST MODIFICATION BY THE COURT

We next consider the trial court's ruling on defendant's cross-petition to reform or modify the trust instrument, specifically by eliminating both the credit shelter trust provisions and the irrevocability provision. The court granted modification under ORS 130.225 to achieve the settlor's tax objectives, reasoning that Dean and defendant did not intend to give up control of their assets, regardless of what tax benefits they might achieve from creating a trust. The court also granted modification under ORS 130.205, apparently based on the litigation itself being an unanticipated circumstance that warranted modification of the trust agreement.

In granting the cross-petition on those two grounds, the trial court emphasized that it was modifying the trust agreement "not because it is necessary, but because it enhances clarity." The court stated that modifying the trust language for tax reasons, while unnecessary, would align the trust language with the grantors' intent, as a "sweeping relinquishment of autonomy would not have been worth any tax savings [the trust] could have achieved." It similarly stated that modifying the trust language due to unanticipated circumstances, while unnecessary, would serve "efficiency."

We do not share the trial court's view that the modifications clarified the existing trust terms without changing them. The more immediate question, however, is whether the trial court had authority under ORS 130.225 and ORS 130.205 to modify the trust agreement as it did. Whether the court had legal authority under a particular statute to modify the trust instrument is a legal question that we review for errors of law. If the court had statutory authority, then we review for abuse of discretion the court's discretionary decision whether to grant a modification. *See Union Lumber Co. v. Miller*, 360 Or 767, 777, 388 P3d 327 (2017)

(describing in an analogous circumstance the different standards of review that apply to different aspects of the court's ruling).

A.  *Modification under ORS 130.225*

We begin with the trial court's modification of the trust agreement pursuant to ORS 130.225. ORS 130.225 states, "The court may modify the terms of a trust *to achieve the settlor's tax objectives* if the modification is not contrary to the settlor's probable intention. The court may provide that the modification has retroactive effect." (Emphasis added.) On its face, ORS 130.225 gives a court authority to modify a trust instrument only "to achieve the settlor's tax objectives." The official commentary from the committee that drafted the Oregon Uniform Trust Code reaffirms that purpose, describing ORS 130.225 as allowing modification to "meet the settlor's tax-saving objective" within certain limitations. Valerie J. Vollmar, *The Oregon Uniform Trust Code and Comments*, 42 Willamette L Rev 187, 277 (2006) (setting forth the official commentary to the Oregon Uniform Trust Code).[6]

Here, it is impossible to view the elimination of the credit shelter trust provisions as helping to achieve the grantors' tax objectives. Looking at the trust agreement itself, the credit shelter trust provisions are necessarily intended to achieve a federal tax benefit. Eliminating those provisions does not further that tax objective; to the contrary, it defeats it.

The trial court relied on defendant's trial testimony to conclude that eliminating the credit shelter trust provisions would achieve Dean's and defendant's tax objectives. The difficulty with that reasoning is that defendant never explained how removing the credit shelter trust provisions would help achieve any *tax objectives* that she and Dean were trying to achieve with the trust. If a settlor had no tax objectives in creating a trust, then the trust instrument

---

[6] The official commentary regarding ORS 130.225 notes, "Whether a modification made by the court under this section will be recognized under federal tax law is a matter of federal law. Absent specific statutory or regulatory authority, binding recognition is normally given only to modifications made prior to the taxing event, for example, the death of the testator or settlor in the case of the federal estate tax." Vollmar, 42 Willamette L Rev at 277.

necessarily cannot be modified to achieve the settlor's tax objectives, because there were none. If a settlor had tax objectives—such as an objective to obtain the federal tax savings available through a credit shelter trust—then ORS 130.225 allows modification to achieve those tax objectives, but it cannot be said that eliminating the tax savings achieves the tax objectives.

Although there is no existing Oregon appellate case law regarding ORS 130.225, other states have similar trust laws, so out-of-state cases provide some useful examples of when modification may achieve tax objectives. In *Pellegrini v. Breitenbach*, 456 Mass 876, 881, 926 NE2d 544 (2010), the Massachusetts Supreme Judicial Court rejected a request to modify a will to create a trust to achieve the settlor's tax objectives, in part because there was no evidence "that he was concerned about the possible tax consequences associated with any of his bequests." Conversely, in *Slavin v. Beckwith*, 456 Mass 1013, 1014, 924 NE2d 684 (2010), the same court allowed a trust modification to take advantage of tax credits that became available after the settlor died, where there was "clear and decisive proof" of the settlor's "tax consciousness."

Here, the modification of the trust agreement does not serve to achieve the grantors' *tax objectives* but, instead, to achieve a *non-tax objective* that the court found them to have, *i.e.*, retention of complete control of their assets without regard to the tax consequences. That cannot be said to be a *tax objective*. It also is completely incompatible with the grantors' decision to create a credit shelter trust, which necessarily requires giving up some control in exchange for a federal tax benefit.[7]

---

[7] The trade-off between control of assets and tax savings is inherent in the decision to put money into an irrevocable trust. As one court has put it,

"In very general terms, irrevocable trusts are most often created for tax savings purposes, for instance to reduce the size of the settlor's estate that would be subject to death taxes. To gain the tax advantages, the settlor must permanently give up control of the gift property. Thus, by their very nature, irrevocable trusts carry risks that relationships and values and circumstances may change after the date the Trust is funded, and those risks must be evaluated against the tax and other benefits received by the settlor(s)."

*In re Stephen L. Chapman Irrevocable Trust Agreement*, 953 NE2d 573, 582 (Ind Ct App 2011) (internal citations omitted).

Under the circumstances, any remedy for defendant's situation lies in reformation based on mistake under ORS 130.220, not modification to achieve the grantors' tax objectives under ORS 130.225. To use a simple analogy, if a person enters into a contract to purchase something, but later claims that they did not mean to commit to purchasing it and do not want to be bound to purchase it, then rescinding the contract will put them back in the position where they started. It would not make sense, however, to remove the provisions requiring the purchase and describe that as simply modifying the contract to achieve the person's objectives in entering it. Here, the trial court did not modify the trust instrument in a way that achieves the grantors' tax objectives in setting up the trust. Rather, it *undid* the most significant provisions of the trust agreement to relieve defendant of her obligations thereunder, based on defendant's testimony that she did not read or understand the trust agreement and did not mean to give up control of her assets, thus putting defendant back in the position that she would have been in had she not executed the trust instrument. That is not a modification "to achieve the settlor's tax objectives" under ORS 130.225.

We therefore conclude that the trial court erred in granting defendant's cross-petition to modify the trust agreement under authority of ORS 130.225. To the extent that the terms of the trust agreement are (and always have been) contrary to Dean's and defendant's actual intentions, any remedy for that problem lies not in ORS 130.225, but in ORS 130.220, which allows reformation of a trust based on clear and convincing evidence of a mistake of fact or law, even if the trust terms are unambiguous. The trial court denied defendant's request for reformation pursuant to ORS 130.220, however, and defendant has not cross-assigned error to that ruling, so that issue is not before us.[8]

---

[8] The trial court's reasoning for denying defendant's request for reformation under ORS 130.220 is unclear. To the extent that the denial of relief under ORS 130.220 was inextricably intertwined with the court's flawed reasoning for granting modification under ORS 130.225 and ORS 130.205(1), we express no opinion as to whether the court may be able to revisit ORS 130.220 on remand, as the parties have not addressed that issue at all.

B. *Modification under ORS 130.205(1)*

The trial court also modified the trust agreement pursuant to ORS 130.205(1), which allows modification in the event of unanticipated circumstances:

> "The court may modify the administrative or dispositive terms of a trust or terminate the trust if modification or termination will further the purposes of the trust and the modification or termination is requested by reason of circumstances not anticipated by the settlor. To the extent practicable, the modification must be made in accordance with the settlor's probable intention."

*See* Vollmar, 42 Willamette L Rev at 269-70 (setting forth the official commentary to the Oregon Uniform Trust Code, which includes as an example of unanticipated circumstances that "modification of the dispositive provisions to increase support of a beneficiary might be appropriate if the beneficiary has become unable to provide for support due to poor health or serious injury"); *see also, e.g.*, *In re Trust D of Darby*, 290 Kan 785, 794, 234 P3d 793 (2010) ("Courts have generally been more willing to allow modification for unanticipated circumstances where there are truly unforeseen events resulting in economic hardship, the incapacity of a beneficiary, the impossibility or imprudence of a trust provision, or the diminution in value of a trust asset.").

In her cross-petition and at trial, defendant identified Dino's death as the unanticipated circumstance at issue. Although it is not entirely clear whether the trial court ultimately relied on that circumstance, we address it as the unanticipated circumstance that was pleaded and argued.

The unexpected death of the grantors' son, Dino, after the trust became irrevocable is not the type of unforeseen circumstance that allows modification under ORS 130.205(1). The entire point of designating a contingent beneficiary in a trust instrument is to account for the possibility that the primary beneficiary will predecease the grantors. Although Dean and defendant no doubt hoped their son would outlive them (as any parent would), they specifically planned for the possibility that Dino would predecease one or both of them. Under Section 5.6 of the trust agreement, if Dino is no longer alive when his second parent dies, then

the property in the Credit Shelter Trust is to go to Dino's children. If Dino has no living children, it is to go to plaintiff. If plaintiff is deceased, it is to go to plaintiff's children in equal shares.

Because the grantors fully provided for what would happen in the event of Dino's death, even if that death was not expected, it cannot be said to be an unanticipated circumstance for purposes of modification of the trust agreement under ORS 130.205(1). *Cf. Pratt and Pratt*, 29 Or App 115, 117, 562 P2d 984 (1977) (explaining, in the context of a spousal support award modification proceeding, that a change in circumstances could not be considered "unanticipated," as necessary to allow modification, where it had been considered in the original support judgment); *see also, e.g.*, *In re Stephen L. Chapman Irrevocable Trust Agreement*, 953 NE2d 573, 582 (Ind Ct App 2011) (reversing a judgment modifying a trust instrument based on unanticipated circumstances, specifically divorce, because the trust instrument addressed the possibility of divorce, and "where a trust does, in fact, provide for subsequent developments, the circumstances *were* anticipated by the settlor" (emphasis in original)).

Finally, in an email sent to the parties after making its oral ruling, the trial court suggested that it viewed the "protracted litigation" itself as an unanticipated circumstance that warranted trust modification. In her answering brief on appeal, defendant adopts that argument, asserting that the trial court properly modified the trust agreement based on the unanticipated circumstance of "the Binns' nephew [suing] his elderly aunt." We are unaware of any legal authority, and defendant does not cite any, for treating litigation to enforce a trust as an unanticipated circumstance permitting trust modification. We readily reject such reasoning, at least as employed here.

We therefore conclude that the trial court erred in granting defendant's cross-petition to modify the trust agreement under authority of ORS 130.205(1).

## IV.   CONCLUSION

The trial court misinterpreted the irrevocability provision in the trust agreement and, as a result, erroneously

dismissed plaintiff's claims. The court also erred in modifying the trust agreement under authority of ORS 130.225 and ORS 130.205(1). Accordingly, we reverse the general judgment and, by extension, the supplemental judgment. *See ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 257 Or App 180, 186, 306 P3d 661, *rev den*, 354 Or 491 (2013) (explaining that, by operation of law, when we reverse a general judgment, any supplemental judgment for attorney fees that is "predicated" on the initial award is also reversed, regardless of whether we expressly include it in our disposition).

Reversed and remanded.