92 May 28, 2026 No. 462

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of
The Beaumont Family Trust of February 9, 2007

Lizabeth J. DOMBROWSKY,
*Petitioner-Respondent,*

*and*

Judy A. BEAUMONT,
individually and in her capacity as
Successor Trustee of the Beaumont Family Trust of
February 9, 2007,
*Respondent-Appellant.*

Jackson County Circuit Court
20PB01209; A183002

David G. Hoppe, Judge. (General judgment entered September 23, 2023).

Timothy C. Gerking, Judge. (General judgment entered November 15, 2023).

Argued and submitted January 29, 2025.

George W. Kelly argued the cause and filed the briefs for appellant.

Hannah Harding argued the cause for respondent. Also on the brief was Jarvis Glatte Bunick, LLP.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded.

**PAGÁN, J.**

This matter concerns the interpretation and administration of the Beaumont Family Trust. Respondent below, Judy Beaumont,[1] one of the settlors of the trust along with her now deceased husband, Lee Beaumont III, appeals from a judgment that removed her as trustee, barred her from receiving further distributions from the trust, denied her counterclaims to reform the trust and enforce the trust's *in terrorem* clause, and awarded Dombrowsky attorney fees. Beaumont asserts six assignments of error, arguing that the trial court erred by (1) determining that the term "joint lives" (or "joint lifetimes") unambiguously referred to the period when both settlors were alive; (2) excluding Beaumont's testimony about her husband's intent for the trust as hearsay; (3) removing Beaumont as trustee of the trust; (4) awarding Dombrowsky attorney fees; (5) not reforming the trust; and (6) not enforcing the trust's *in terrorem* clause.

We agree with Beaumont that the term "joint lives" is ambiguous and following from that conclusion, we further determine that the trial court erred by excluding testimony pertaining to 'Lee's state of mind when creating the trust, removing Beaumont as trustee, and awarding Dombrowsky attorney fees. We do not reach the question of whether Beaumont presented clear and convincing evidence that would warrant reformation of the trust because on remand the question will be decided on a different record. Lastly, we conclude that the trial court did not err in determining that the trust's *in terrorem* clause was not triggered by Dombrowsky bringing this action.

Thus, we reverse and remand for further proceedings on the meaning of "joint lives."

## I.  BACKGROUND

When reviewing a trial court's conclusion of whether a term in an agreement such as a trust is unambiguous, we review the trial court's findings of historical fact

---

[1] To avoid confusion based on party designations below and on appeal, we refer to the parties by their names. Because there are multiple people with the last name Beaumont, we refer to Judy Beaumont by last name, and for clarity, we refer to Lee Beaumont III as Lee.

for any evidence in the record. *Batzer Construction, Inc. v. Boyer,* 204 Or App 309, 318, 129 P3d 773, *rev den*, 341 Or 366 (2006). Additionally, "[i]f findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate [legal] conclusion." *Id.* (internal quotation marks removed). We review the trial court's legal conclusions for legal error. *Id.* We present the facts in line with that standard.

We have broken the facts into four sections for clarity: (1) creation and contents of the trust, (2) relevant provisions of the trust, (3) events following Lee's death, and (4) trial court proceedings.

A.   *Creation and Property of the Beaumont Family Trust*

In 2007, Beaumont and Lee met with an attorney to establish a trust to hold title for their real property and other assets. Both Beaumont and Lee had adult children from prior marriages, and they were included as secondary beneficiaries of the trust. At the initial signing, the couple transferred three parcels of real property into the trust: the couple's residence (the Birdseye property), a commercial property, and a rental residence. The trust also provided for the disposition of a survivor's trust from Lee's parents, with instructions on how to distribute the assets to Lee's family members, including Beaumont, if she survived him.

Between the creation of the trust and Lee's death in 2018, other property was added to the trust, including bonds held in a brokerage account and two vehicles. By its terms, the trust became irrevocable after one of the settlors died.

B.   *Relevant Provisions of the Trust*

Both the parties and the trial court agreed that the trust instrument is poorly drafted. The trust instrument has 11 articles, which provide: the purpose and intent of the trust (Article 1), what property is in the trust (Articles 2 and 3), requirements for revoking and amending the trust (Article 4), the fiduciary duties and powers of the Trustee (Articles 5 and 6), disposition of the trust property during the settlors' joint lives (Article 7) and after the death of the

surviving settlor (Article 9), how the trust is to be used to pay for expenses after the death of each settlor (Article 8), an *in terrorem* clause (Article 10), and general administrative provisions (Article 11).

The phrase at the heart of this dispute is "joint lives" or "joint lifetimes." The phrase appears in the following four places:

- (Article 1): "The Settlors acknowledge that the purpose of this Trust is to establish a vehicle to hold title to real property and other assets for management and distributive purposes for their benefit as primary beneficiaries during their *joint lifetimes* and thereafter for the benefit of secondary beneficiaries as hereinafter provided."

- (Article 4(A)): "Either of the Settlors, during their *joint lives*, may at any time and upon successive occasions, revoke this Trust in whole or in part."

- (Article 5(A)): "The original Trustee under this Declaration of Trust, shall be LEE C. BEAUMONT, III and JUDY A. BEAUMONT, to serve as Co-Trustees with all of the obligations, powers, and authority contained within this Trust Agreement. Notwithstanding any other provision to the contrary, the Settlors specifically authorize either of the original Co-trustees, during their *joint lives* and while serving as Co-trustees, to act independently of the other and have the authority to perform all powers and acts as granted under this Declaration of Trust."

- (Article 7): "During Settlors' *joint lives*, the trust shall be administered and distributed as follows:

  "A.   The Trustee shall distribute to or for Settlors' benefit such portions of the income and principal of the trust as Settlors may from time to time request.

  "B.   Settlors shall have possession and full management of Settlors' residence and real property known as 1520 Birdseye Creek Road, Gold Hill, Oregon, Oregon [*sic*] and shall have the right to occupy it, or any successor residential premises, rent free."

Also relevant to the dispute, Article 10 of the agreement contains the following *in terrorem* clause:

"Any person contesting or challenging this Agreement, as now written and hereafter amended, or the administration or distribution of any or all of the Trust Estate as provided herein, shall be given as a specific gift the sum of $1.00, and no more ***.

"Such contest or challenge includes but is not limited to the filing of any proceeding in any court, with the same to include but not limited to any probate department thereof, in the attempt or actually to have such court exercise jurisdiction over the Agreement, or of any Settlor, or of any Trustee or of any actual or contingent or proposed beneficiary hereunder, or of any other natural or legal person in any fashion, or any or all of the Trust Estate, except as otherwise provided or limited by the terms of the Oregon Uniform Trust Code (ORS 130.235)."

C.   *Events Following Lee's Death*

On April 10, 2018, Lee passed away. Having survived Lee, Beaumont became the sole trustee of the Beaumont Family Trust. On August 5, 2018, Lee's son, Lee Beaumont IV (Beaumont's stepson) found a copy of the trust agreement. He informed his sister, Dombrowsky, of the existence of the trust.

After Lee's death, Beaumont continued to manage the trust assets in the way she claimed she and Lee always had. Dombrowsky identified a number of Beaumont's actions that caused her concern as a beneficiary of the trust, including several of Beaumont's withdrawals from the trust accounts, that Beaumont initially put the proceeds from the sale of the Birdseye property into the trust account with other trust assets, that Dombrowsky did not receive any reports or accounting from Beaumont until she brought this action in February of 2020, and that the accounting reports she did receive did not cover the entirety of the time period since Lee's death.

D.   *Trial Court Proceedings*

Dombrowsky, Lee's daughter and Beaumont's stepdaughter, filed a petition in which she alleged a breach of trust and sought remedies including that Beaumont be removed as trustee, that Beaumont reimburse the trust for any misappropriated funds, and for the trustee to administer the trust

in accordance with the trust agreement. The petition sought for the court to further instruct and authorize Beaumont as the trustee in administering the trust as drafted and also requested court orders requiring that Beaumont only make distributions from the trust as set forth in Article 9 and, that Beaumont provide a full accounting of all the trust assets, that Beaumont pay back the trust for the reasonable value of any misappropriated funds, that Beaumont be removed as trustee if she was found to have misappropriated funds, that Beaumont was to be enjoined from using or distributing the trust assets to herself for her own benefit, and that Beaumont was to immediately perform her duty as trustee and provide a trustee's report from the date of Lee's death to the present. Beaumont's response to the petition included several counterclaims, including as relevant here, a claim of mutual mistake requiring reformation of the trust and an invocation of the trust's *in terrorem* clause.

Parties went to trial in March 2023. There, Beaumont offered testimony of her and Lee's intent, saying, "So the intention of the trust was to provide for the surviving spouse for the rest of their life. And then we put our wishes on paper, including every one of our kids and grandkids that were alive at that time." Later, in her testimony, this exchange occurred:

"Q:  What did you [Beaumont] believe would happen with the trust funds after the first of you died?

"A:  The intention that my husband and I wrote this—"

Beaumont was then cut off when Dombrowsky objected to the testimony as hearsay. Beaumont's counsel responded to the objection by saying, "Your Honor, I was just wondering if we could use a state of mind ***." The court sustained the objection. A similar exchange happened later in the trial during Lee IV's (Beaumont's stepson) testimony:

"Q:  [Was] it your father's wishes that his wife have no funds from the trust?

"MS. BUNICK:   Objection. Calls for hearsay.

"THE COURT:   Sustained."

Beaumont did not raise state of mind after that objection.

In its written order, the trial court found that the term "joint lives" was unambiguous and referred to the period when both Beaumont and Lee were alive. The court reasoned that Dombrowsky's interpretation was unambiguously correct in Articles 4 and 5, and thus it used that same meaning in Articles 1 and 7, even though the court acknowledged that those provisions were more ambiguous. The court also found that the use of the plural "settlors" in Article 7 supported Dombrowsky's interpretation. The court then granted Dombrowsky's requested relief and removed Beaumont as trustee of the trust, determined that Beaumont had committed a serious breach as trustee by failing to provide requested information to the secondary beneficiaries, providing incomplete reports when she eventually responded to the requests for accounting, and misusing trust funds. Last, the court denied Beaumont's affirmative defenses and counterclaims, including Beaumont's requests to reform the trust and to invoke the trust's *in terrorem* clause. The court granted Dombrowsky attorney fees.

Beaumont timely appealed.

## II. ANALYSIS

A. *Ambiguity of "Joint Lives/Lifetimes"*

Beaumont argues that the trial court erred by determining that the term "joint lives" unambiguously meant the period of time when both settlors were alive. We agree and conclude that the term is ambiguous because under the trial court's interpretation of "joint lives," the trust (1) leaves an inexplicable gap as to how the trust is to be managed by a surviving spouse, and (2) creates an irrational procedure for the disbursement of trust property to the secondary beneficiaries.

To ground the discussion of intent and ambiguity, it is first helpful to briefly consider the general purpose of family trusts and why people use them. Family trusts are often used as tools for estate planning, where trusts have distinct advantages over outright disposition of a person or persons' property through a will or *inter vivos* gifts. Myron Kove, George G. Bogert & George T. Bogert, *Bogert's the Law of Trusts and Trustees*, § 231 (May 2025 ed). Family trusts,

among other benefits, help protect against unforeseen contingencies such as incompetency and disability, avoid probate proceedings, can produce tax savings for the settlors' and beneficiaries, and in general "allow flexibility in the estate plan arrangements with respect to the disposition of trust income and principal and to the ultimate distribution of the [settlors'] estate." *Id.*

Our ultimate goal in interpreting a trust is to "determine and give effect to the intent of the [settlor], if possible." *Frakes v. Nay*, 254 Or App 236, 246, 295 P3d 94, *rev den* 353 Or 747 (2013). However, extrinsic evidence is not admissible to establish the settlors' intent if the trust instrument is fully integrated and unambiguous on its face. *Downs v. Binn*, 336 Or App 665, 673, 562 P3d 261 (2024), *rev den*, 373 Or 712 (2025). A trust provision is ambiguous "when the language of the instrument is reasonably capable of more than one plausible interpretation." *Id.* (internal quotation marks removed). In analyzing a trust instrument, the principles from the more extensively developed area of contract law are often suitably analogous. *See e.g., id.* at 680 (using an analogy to contracts to illustrate why modification of a trust was an inappropriate remedy in that case); *Samuel v. King,* 186 Or App 684, 692, 64 P3d 1206, *rev den*, 335 Or 443 (2003) (applying the *Yogman* analysis for determining if a contract is facially ambiguous to conclude that the trust at issue was not facially ambiguous). One such contract principle that is relevant here is that if provisions of a contract are unambiguous in isolation but are inconsistent when read together, the contract is inherently—i.e. facially—ambiguous. *See Miller v. Miller*, 276 Or 639, 647, 555 P2d 1246 (1976) ("If, in the particular fact context, the recitals appear to be inconsistent with the operative clauses, as a matter of common sense there is an ambiguity or question about the intent of the parties ***.").

First, the meaning of the term "joint lives" is ambiguous within the text of the trust instrument because neither Beaumont's nor Dombrowsky's interpretation of the phrase creates coherent meaning of the trust as a whole when used as the exclusive meaning of the term. Our reasoning in *Portland Fire Fighters' Assn. v. City of Portland*, 181 Or App

85, 45 P3d 162, *rev den*, 334 Or 491 (2002) is instructive in this case. There, the Firefighters Association and the City disagreed about whether retirees had access to the grievance process designated in the collective bargaining agreement (CBA). *Id.* at 87. The Association argued that they could bring those grievances because the CBA stated that all grievances arising under the CBA must be addressed through the grievance process, while the City argued that they could not because the grievance process referred to "employees" and required first bringing the issue to a supervisor. *Id.* at 92-93. The Employment Relations Board found that the CBA unambiguously did not allow the union to arbitrate retirees' grievances. *Id.* at 92. We determined that the contract was ambiguous because while the different sections were unambiguous in isolation, "neither of the parties' competing interpretations readily could prevail without reconstructing the CBA as a whole into a state of artificially imposed harmony." *Id.* at 94. That principle applies here.

Here, as a preliminary matter, both Beaumont's and Dombrowsky's interpretations of the phrase "joint lives" are reasonable plain language readings of the term, which favors concluding that the term is ambiguous. *Webster's Third New Int'l Dictionary* 1219 (unabridged ed 2002) defines "joint" when used as an adjective, as in "joint lives," to mean "joined, united, or combined." Beaumont reads the phrase to mean "combined" lifetimes, while Dombrowsky agrees with the trial court's finding that it means a "united" lifetime.

While the trial court's interpretation of "joint lives" in Articles 4 and 5 appears to be the unambiguous meaning in those sections, applying that interpretation to every use of the term in the document results in an inexplicable gap in which the agreement is silent as to the purpose of the trust and how it is to be administered while only one settlor is alive. The inconsistency can be seen when considering Articles 7, 8 and 9 together. Those three sections describe the rights to trust property and distributions during various time periods, with Article 7 setting out what happens during the "joint lives" of the settlors, Article 8 setting out how the trust assets may be used to cover expenses associated with the death of a settlor, and Article 9 setting out

what happens to the trust after the death of the surviving settlor. Nowhere in those three sections (or anywhere else in the trust instrument) does the document indicate what should happen to the assets after one settlor has died but the other is still alive. Under Dombrowsky and the trial court's reading of the terms, that period of time would be left as an administrative black hole, where the survivor is still trustee but no one, neither the survivor nor the secondary beneficiaries, can receive any distributions from the trust or have any right to the trust property. Like in *Portland Firefighters*, that reading forces the trust instrument "as a whole into a state of artificially imposed harmony," and that inconsistency results in a trust that is facially ambiguous.

Second, the trial court's reading of the trust means that after the first settlor's death, the surviving settlor has no rights to any of the trust property, but the property cannot be dispersed to the secondary beneficiaries until the surviving settlor dies. In other words, the trust assets would benefit neither the primary nor secondary beneficiaries for an indeterminate amount of time while the surviving settlor is still alive. It is reasonable to infer that the settlors did not intend to enter into a trust agreement that would prevent them and their families from receiving any benefit from the trust assets—including the settlors' residence and their personal vehicles—for potentially many years.

Dombrowsky attempts to dismiss any potential ambiguity by claiming that because the trial court's use of the phrase appears to be unambiguous in some sections, that interpretation must have necessarily applied to all other uses of the term. She relies on the trial court's conclusions, arguing that the use of plural "settlors" in Article 7C indicates that "joint lives" can only reasonably refer to the period when both settlors are alive, and that because Article 8 sets out how trust assets are to be used for covering expenses when each settlor dies, the settlors do address the time period when only one settlor is alive to the full extent they intended. We are not persuaded by either argument.

First, subsection (J) of the General Administrative Provisions (Article 11) provides that "[a]s used in this Trust Agreement, \*\*\* the plural and singular number shall each

be deemed to include the others when the context so indicates." Read in that light, the use of the plural "settlors" cannot on its own support the inference that the section was meant to apply only when both settlors were alive.

Second, while Article 8 is relevant when only one settlor is alive, it is not a disposition of the trust property like Articles 7 and 9, and it pertains equally to when neither settlor is alive. Dombrowsky claims that that provision shows that the settlors contemplated the period when only one settlor is alive and chose only to address the administration and disposition of the trust for that one circumstance, but that reasoning does not fix the obvious gap—potentially of many years—created by the trust having no instructions for the disposition of assets during the surviving settlor's lifetime.

Because there is no single interpretation of the term "joint lives" that renders the trust instrument as a whole coherent, it is inherently ambiguous. "[W]hen a trust provision is ambiguous, extrinsic evidence of the grantor's intent may be considered to resolve the ambiguity. In no event, however, may it be used to contradict or vary the terms of the writing." *Downs*, 336 Or App at 674 (internal citations removed). Thus, we remand to the trial court for further consideration in light of these principles and any extrinsic evidence, such as the statements at issue that we address in the next section, that the parties might provide.

B.  *Exclusion of Hearsay*

Beaumont argues that the trial court erred by not permitting her testimony regarding Lee's intended purpose of the trust because it was admissible under the state of mind hearsay exception, OEC 803(3) or, alternatively, had other circumstantial guarantees of trustworthiness that would allow its admission under OEC 803(28)(a). Because we are remanding for further proceedings based on the first assignment of error and the admissibility of the testimony will likely be an issue again, we address Beaumont's argument of admissibility under OEC 803(3) and conclude that statements of Lee's intent or plan regarding the trust were admissible as to his state of mind. We do not reach her

argument as to the admissibility of Lee's beliefs about the purpose of the trust under OEC 803(28)(a) because we conclude the issue was not preserved.

As a threshold matter, Dombrowsky argues that Beaumont did not preserve her challenge under either OEC 803(3) or (28)(a). To preserve an issue for appeal, it must be raised to the trial court with sufficient specificity for the court to consider and correct the error, if warranted. *State v. Wyatt,* 331 Or 335, 344, 15 P3d 22 (2000). Here, Dombrowsky claims that Beaumont's objection in which she stated, "I was wondering if we could use a state of mind ***?" was not sufficient to preserve the issue. We conclude that Beaumont preserved the argument under OEC 803(3). Beaumont named the hearsay exception she wanted to use, state of mind, which was more than sufficient to allow the trial court to consider and correct any error. We do however agree with Dombrowsky that Beaumont's statements were insufficient for the trial court to understand that she was arguing that the evidence should be admitted under OEC 803(28)(a).

Having concluded the objection under OEC 803(3) was preserved, we subsequently conclude that the trial court erred in sustaining the objection to Beaumont's testimony because her testimony appeared to be, before it was cut off, of Lee's statements regarding his intent or plan for the trust, which fall under the hearsay exception in OEC 803(3).

"We review 'the trial court's ultimate legal conclusion, as to whether the hearsay statement is admissible under an exception to the hearsay rule, to determine if the trial court made an error of law.'" *State v. Blaylock*, 267 Or App 455, 460, 341 P3d 758 (2014), *rev den*, 357 Or 299 (2015) (quoting *State v. Cook*, 340 Or 530, 537, 135 P3d 260 (2006)).

OEC 803(3) allows for hearsay to be admitted when it is: "A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, *such as intent, plan, motive, design,* mental feeling, pain or bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will." (emphasis added). A statement of a declarant's

state of mind is admissible as evidence that the declarant then acted in accordance with that intent, plan, or design. *State v. Gonzalez*, 275 Or App 474, 475, 363 P3d 1291 (2015).

Here, the testimony objected to was as follows:

"Q: What did you [Beaumont] believe would happen with the trust funds after the first of you died?"

"A: The intention that my husband and I wrote this—"

While the wording of the question referred to Beaumont's belief, her answer was framed as her and Lee's intent. If Beaumont was referring to her and Lee's intent at the time of the drafting of the trust instrument, that testimony would have been admissible under 803(3) as a statement of Lee's state of mind. Therefore, the trial court erred in sustaining the objection to the testimony.

C. *Removal of Beaumont as Trustee*

Beaumont argues that the trial court erred when it removed her as trustee after finding that she had materially breached the terms of the trust. Because we agree with Beaumont that the trust instrument is ambiguous and thus the trial court may find fewer breaches of trust on remand, we reverse.

A trustee may be removed from their position if they materially breach the terms of the trust or violate the duties and obligations imposed on trustees by statute. ORS 130.625. ORS 130.625(2) provides that a court may remove a trustee if the court finds:

"(a) The trustee has committed a serious breach of trust;

" * * * * *

"(c) Removal of the trustee best serves the interests of the beneficiaries because the trustee is unfit or unwilling, or has persistently failed to administer the trust effectively[.]"

However, not every breach of trust duties justifies removal of the trustee. *See, e.g., Cloud v. U.S. National Bank*, 280 Or 83, 92, 570 P2d 350 (1977) (declining to remove trustee despite a breach of trustee duties because the trust was near termination). While the court must evaluate whether to remove a trustee based on the circumstances before it, the

comments on ORS 130.625 in the Oregon Uniform Trust Code offer insight into evaluating those circumstances. *See* Valerie J. Vollmar, *The Oregon Uniform Trust Code and Comments*, 42 Willamette L. Rev. 187, 332-33 (2006). The comments note that a "serious breach" can either be a single act that causes substantial harm or a "series of smaller breaches, none of which individually justify removal when considered alone, but which do when considered together." *Id.* at 333.

Depending on how the ambiguity of the term "joint lives" is resolved on remand, some of Beaumont's acts might no longer be breaches of trust. Further, while Beaumont did not communicate with the secondary beneficiaries to the extent she was required to under the statute and that may weigh in favor of removal, Beaumont and Lee designated her as a trustee, even knowing that her knowledge of how to administer a trust may be limited. Therefore, if court finds fewer breaches of trust on remand, its analysis of the factors determining removal of Beaumont as trustee might lead to a different conclusion.

D.   *Attorney Fees*

Attorney fees may be awarded in trust litigation. ORS 130.815. Because we are remanding for further proceedings, the trial court's award of attorney fees is reversed as a matter of law.

E.   *Trust Reformation*

Beaumont argues that it was error for the trial court not to reform the trust to provide for the surviving settlor for the rest of their life because she provided testimonial evidence of her and Lee's intention for the trust. Because we are remanding to resolve the ambiguity of what each instance of "joint lives" means, which will likely result in the admission of additional evidence into the record, we do not reach that assignment of error, as the record will likely be developed further on remand.

F.   *In Terrorem Clause*

Beaumont argues that the trial court should have enforced the trust's *in terrorem* clause because the clause extends to challenges to the "administration" to the trust.

We are unpersuaded by Beaumont's argument because we conclude that the provisions of the *in terrorem* clause that include challenges to aspects of the trust other than its validity are not authorized by statute and, additionally, that it would violate public policy to permit a clause that removes a beneficiary's ability to compel the trustee to administer the trust in accordance with the trust terms and the trustee's statutory obligations.

Oregon law provides that *in terrorem* clauses in trusts are valid and enforceable. ORS 130.235(1). ORS 130.235(4) defines an *in terrorem* clause as: "[A] provision in a trust that reduces or eliminates the interest of a beneficiary under the trust if the beneficiary challenges the *validity* of part or all of the trust." (emphasis added). The authority granted by that statute is specifically limited to challenges to validity, and as a form of forfeiture, *in terrorem* clauses should be construed strictly to their terms. *See Fenner v. Fenner*, 288 Or App 540, 546, 405 P3d 159 (2017), *rev den*, 362 Or 665 (2018). The same policy considerations apply to interpreting the statute that authorizes them.

Because the statute does not address *in terrorem* clauses concerning challenges to trust administration, it is instructive to consider the trust code as a whole. ORS 130.020(3) provides a number of mandatory rules for trusts that cannot be altered by the trust terms, including subsection (b), "[t]he duty of a trustee to act in good faith and in accordance with the purposes of the trust," and subsection (c), "[t]he requirement that a trust and the terms of a trust be for the benefit of the trust beneficiaries * * *." Further, an entire subchapter of the code sets out the duties and powers of the trustee, including, as relevant here, the duties to administer the trust, of loyalty, and of prudent administration. (ORS 130.650-.733). Presumably, if the legislature intended to allow *in terrorem* clauses to extend to trust administration, it would have included that in the statute. Further, without the statutory duties placed on the trustee, beneficiaries would have no recourse against a trustee who was ineffective or acting in bad faith.

Here, Dombrowsky does not challenge the trust validity. Her claim is that Beaumont was not administering

the trust according to its terms. Dombrowsky's position would be undermined if she did not agree that the trust itself is valid.

Nevertheless, Beaumont argues that because challenges to the trustee's administration and distributions, which are included in the trust's *in terrorem* clause, and because ORS 135.235 authorizes *in terrorem* clauses pertaining to trust validity, the trial court was obligated to enforce the *in terrorem* clause. But Beaumont does not address the lack of statutory authorization to extend the reach of *in terrorem* clauses to trust administration and does not address the potential ramifications of allowing settlors to forbid beneficiaries from challenging trust administration and distributions, which, in a clause as broad as the one here, would undermine the ability of beneficiaries to enforce their rights in a trust.

## III.   CONCLUSION

We determine that several of the rulings of the trial court were in error. It was error for the trial court to conclude that the term "joint lives" is unambiguous, to exclude evidence of Lee's intent or plan for the trust at the time the trust was created, to remove Beaumont as trustee, and to award Dombrowsky attorney fees. Because we are remanding for further proceedings, we do not reach whether Beaumont provided clear and convincing evidence that would permit reformation of the trust. However, we do determine that the trial court did not err by refusing to enforce the *in terrorem* clause against Dombrowsky for bringing a challenge to the administration of the trust.

Reversed and remanded.